**UNITED STATES of America,**
**Appellee/Cross–Appellant,**

v.

**Bobby Dale SMITH,**
**Appellant/Cross–Appellee.**

**Nos. 89–1512SI, 89–1701SI.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1989.

Decided July 27, 1990.

Joseph J. Hrvol, Council Bluffs, Iowa, for appellant/cross-appellee.

Ronald M. Keyser, Des Moines, Iowa, for appellee/cross-appellant.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and McMILLAN,* Senior District Judge.

ARNOLD, Circuit Judge.

Bobby Dale Smith appeals his conviction for several offenses growing out of a conspiracy to distribute cocaine. Smith was a middle-level distributor of cocaine and marijuana in Council Bluffs, Iowa and Omaha, Nebraska. He claims the District Court[1] erred in admitting evidence of his crime secured through a wiretap and in admitting statements of his (alleged) co-conspirators. Further, he claims the District Court mis-

---

* The Honorable James B. McMillan, Senior United States District Judge for the Western District of North Carolina, sitting by designation.

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

takenly found him to be a career offender when computing his sentence. The government cross-appeals Smith's sentence, arguing that the District Court's downward departure was unjustified. We affirm Smith's conviction and sentence.[2]

### I.

Smith alleges two errors involving the wiretap used to gather evidence in this case. Members of the Omaha Police Department suspected that Smith was involved in a drug ring. After other investigative tactics failed, they obtained a state-court order and tapped his phone. The appellant first argues that the wiretap should not have been authorized. Moreover, he contends that even if the authorization was proper, the officers' failure to minimize their intrusion on his phone conversations taints the evidence gathered from those conversations. The District Court was not persuaded by Smith's arguments, and neither are we.

■ The relevant statute requires a showing of necessity before a wiretap will be authorized by a court of competent jurisdiction. Neb.Rev.Stat. §§ 86–701—86–712 (reissue 1987). (This Nebraska statute tracks the standards and requirements in 18 U.S.C. § 2518 *et seq.*, the federal wiretap statute.) It is the government's burden to demonstrate the failure of previous investigative efforts and the need for a wiretap. Here the officers' affidavit did precisely that. Rather than being (as the appellant contends) the beginning of an investigation, the wiretap application came in the middle of a stalled investigation. Anonymous callers and confidential informants had alerted the police to Smith's activities. Surveillance of his house and his girlfriend's house had been unavailing. Pen registers were secured, but this review of phone records also led nowhere. Officers attempted to search Smith's garbage, but he never placed it on the curb. On two occasions, officers posing as yard men approached Smith seeking work (and the opportunity to watch him closely), but again without success. Smith's use of an alias and his change of address further hindered the investigation.

After all these efforts, the police still did not know who was part of Smith's operation: who supplied Smith with drugs and who purchased them for resale. On the basis of these past efforts and the information sought, the Nebraska court properly authorized the wiretap. *United States v. O'Connell,* 841 F.2d 1408 (8th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). As the District Court correctly held, the appellant's arguments against authorization supply no good reason to suppress any of the challenged evidence. The wiretap was necessary within the statute's meaning.

■ The same statute that requires a showing of necessity to authorize a wiretap requires more: once the tap is in place, the intrusion into privileged and innocent conversations must be minimized. Neb.Rev. Stat. § 86–705(6). The court order authorizing this wiretap echoed the need for selective monitoring of conversations. This record reflects a good deal of police effort to that end. A minimization conference was held prior to beginning the surveillance. The department's seven-page minimization guidelines were distributed and discussed at that meeting. Those guidelines specifically instructed officers to listen only for a minute or two to determine if the call was crime-related or innocent. If the officers reasonably believed the call was crime-related, continued surveillance was required. If the call seemed innocent, ongoing surveillance ceased. Thereafter, every thirty to sixty seconds, surveillance could briefly resume to insure that the call remained innocent. Using these guidelines, almost thirty percent of all the calls made or received during the wiretap were minimized.

---

**2.** Smith was convicted of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), and traveling in interstate commerce with the intent to facilitate the drug conspiracy in violation of 18 U.S.C. §§ 1952(a)(2) and (a)(3).

Smith's claim here involves a call that was not minimized, but which he argues should have been. Smith and his girlfriend, Patricia Mehl, went to Texas. The investigators weren't sure, but they (correctly) thought the trip might be drug-related. Smith's younger sister Robin agreed to house-sit at Smith's residence. The officers continued to monitor calls, suspecting messages to and from Smith about his drug business would be relayed through the house-sitter. When Smith's former girlfriend—Lisa Shrader—called, and the house-sitter told her that Smith was out of town, the officers suspected a crime-related call. They did not minimize. Approximately two minutes and twenty-five seconds into the conversation, Smith's little sister told Shrader that the appellant had stashed most of his drugs and money at their parents' house prior to the trip. That information made the case against Smith by exposing his drug cache; it helped secure the warrants for his arrest, and for the search of his (and his parents') house.

Smith's assertions that this call should have been minimized are misplaced. The many-factored analysis we use for these kinds of claims ultimately resolves itself into the reasonableness of the officers' actions. *United States v. Garcia*, 785 F.2d 214 (8th Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Their generalized suspicion of the residence as a conduit for information during the trip was reasonable. Their particularized suspicion of this call was also reasonable. Though neither Robin Smith nor Lisa Shrader were ultimately charged as co-conspirators, they were suspected as such at the time of this call. The officers believed that members of Smith's family were aiding him, though they were uncertain which ones. They also believed that Lisa Shrader had helped Smith obtain identification establishing his alias—Charles Shrader—using her brother's birth certificate. The appellant places much weight on Robin Smith's age (thirteen years) at the time of

the call. Since the officers did not know her age, this is irrelevant to our evaluation of their decision. There is no error in the District Court's refusal to suppress the evidence eventually secured based on this call. *Garcia*, 785 F.2d at 224.

■ Smith next argues that the trial court erred in admitting statements of his co-conspirators over his hearsay objections. Robin Smith's statements that her brother's drugs were at their parents' house, and Betty and Bud Sarten's statements that the appellant was their supplier, came in at trial under Federal Rule of Evidence 801(d)(2)(E). That rule provides that co-conspirators' statements in furtherance of the conspiracy are not hearsay. The declarant's part in the conspiracy must be demonstrated by a preponderance of the evidence, including the statements in issue. *Bourjaily v. United States*, 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987).

■ The appellant's claim that no evidence (apart from the challenged statements) exists of Robin Smith's and the Sartens' participation in the conspiracy is betrayed by the record. Robin Smith knew about her brother's drug activities. The District Court found that her house-sitting facilitated those activities. T. 528. The Court also noted the drug money—over $6000 of proceeds from Bobby Dale Smith's drug sales—found in her purse when the warrant was executed at Smith's house. *Id.* The Sartens' statements were testified to by Patrick Clark. Clark bought drugs from the Sartens for resale. Clark not only heard the Sartens name Smith as their source on several occasions, he saw Smith in their home with a suitcase full of white powder. Given these facts, and the statements themselves, which the District Court credited, we cannot say that the Court erred in admitting the challenged statements. *United States v. Valverde*, 846 F.2d 513, 516 (8th Cir.1988).[3] Even assuming error, the mistake was harmless. Af-

---

3. The appellant also challenges the admission of Lisa Shrader's statements during her conversation with Robin Smith. Since none of those statements was introduced or admitted, there is no error here either.

ter he was arrested, Smith admitted that the drugs seized at his parents' house were his, and that he sold the Sartens cocaine on many occasions.

■ Smith's final cluster of challenges concerns his sentence. He first contends that the District Court erroneously applied the Sentencing Guidelines to three of his crimes. The Court erred, his argument runs, because the heart of the conspiracy occurred prior to the effective date of those guidelines. This contention is factually and legally incorrect. Smith's attempt to secrete his drugs and drug money, as well as his trip to visit his supplier in Texas, occurred after the Sentencing Guidelines became effective. Those facts establish his possession of the contraband, and travel to ensure continued possession. Further, the law in our circuit is that if the conspiracy straddles the effective date of the guidelines, then the guidelines apply. *United States v. Stewart*, 878 F.2d 256, 259 (8th Cir.1989). Sentencing the appellant under the guidelines was correct.[4]

■ Smith next contends that he was improperly classed as a career offender during sentencing. The District Court looked to his two prior convictions—one for burglary and another for conspiracy—in making this determination. U.S.S.G. § 4B1.1. Smith would have us remove him from the reach of this provision by holding that his second-degree burglary was not a crime of violence. The Application Note to § 4B1.2 (the definitional section for § 4B1.1) and the decisions of our sister circuits, *e.g., United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989), reject Smith's interpretation. We do too. The essence of burglary is violating another's premises. The crime carries with it a distinct risk of injury to the person. The appellant also argues that because he pleaded guilty to violating the general-conspiracy statute (instead of the drug-conspiracy statute) when caught selling LSD, this conviction is not a drug-related offense for § 4B1.1 purposes. We think the undisputed facts of Smith's crime, not the name of the statute he was

sentenced under, are determinative. Smith was properly considered a career offender at sentencing.

■ Finally, Smith asserts that he was denied due process at sentencing because his post-arrest statements were used against him. That is not the law. Other than the constraints of the Constitution, "[n]o limitation shall be placed on information concerning [the defendant's] background, character, and conduct ..." that can be considered at sentencing. 18 U.S.C. § 3661. Smith willingly revealed these details of his background, and it was proper for the District Court to consider them at sentencing.

## II.

The government has cross-appealed Smith's sentence. The guideline range for his offense was between twenty-four years, four months and thirty years, five months. The District Court sentenced Smith to twenty years in prison, giving three reasons for departing downward from the guideline range: the lack of deterrence value in a longer sentence, the circumstances of Smith's career (its brevity and his youth when the crimes were committed), and Smith's apparent rehabilitation. The government argues that none of these factors justifies departure. It urges that the Congress and the Commission have either already considered these factors or prohibited sentencing courts from considering them.

As a general matter, the government perceives barriers to justifiable discretion at sentencing that do not exist. There is a growing awareness of measured play in the joints of the guidelines. *United States v. Brown*, 903 F.2d 540 (8th Cir.1990); *United States v. Rodriguez*, 724 F.Supp. 1118 (S.D. N.Y.1989). The organic statute invites sentencing courts to attend to circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). The Commission repeats that invitation in

---

**4.** The appellant was also correctly sentenced outside the guidelines for traveling in interstate

commerce prior to the effective date of the guidelines.

the introduction and policy statements that frame this first set of guidelines. U.S.S.G. Ch. 1, Part A, Introduction (4)(b); U.S.S.G. Ch. 5, Part H. Those policy statements address specific offender characteristics. While race, sex, national origin, creed, religion, socio-economic status, and substance abuse can never justify departure, a host of other factors are sometimes—though not "ordinarily"—relevant to sentencing. U.S.S.G. Ch. 5, Part H. In cases that lie outside the "heartland" of sentencing, cases involving defendants who are not ordinary, sentencing courts have a special responsibility. By acknowledging and explaining the departures required to do justice, sentencing courts—like the juries Justice Holmes envisioned working pure the law of negligence—contribute to a better set of future guidelines. U.S.S.G. Ch. 1, Part A, Introduction (4)(b); O.W. Holmes, Jr., *The Common Law* 123–25 (1881).

■ The relevant statute prescribes a test of reasonableness for evaluating departures. 18 U.S.C. § 3742(e)(3). Our Court has adopted the analysis suggested by the Court of Appeals for the First Circuit to give meaningful content to this standard. *United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The analysis comes in three parts. We first evaluate, as a matter of law, whether the circumstances relied upon by the district court are unusual enough to warrant departure. We then consider whether the district court clearly erred in finding the historical facts that could justify departure. And lastly we sum up the inquiry by evaluating the reasonableness of the sentence—giving due deference to the sentencing court's superior position and considering the statutory goals of sentencing. Our Court has applied this analysis in reviewing upward departures, *e.g., United States v. Snover,* 900 F.2d 1207 (8th Cir. 1990), and downward departures, *e.g., United States v. Crumb,* 902 F.2d 1337 (8th Cir.1990), and we apply it today.

■ At least one of the circumstances relied upon by the District Court—the details of Smith's criminal career—justifies the departure in this case. In *Brown, supra,* we recently rejected the proposition that the career-offender provision requires a certain criminal history category in every case. *Brown,* 903 F.2d at 545. We read *Brown* to stand for the eminently reasonable principle that all careers are not the same. The length and scope of the career that lands the criminal under the career-offender guideline are appropriate grounds for departure, either upward or downward, in an unusual case. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0 (Grounds for Departure Policy Statement).

■ Bobby Dale Smith's career was neither extensive nor long. The District Court found only two relevant prior crimes, placing him just inside the career-offender guideline. Though serious, the facts of these crimes nonetheless reveal each incident as a somewhat small-time offense. The burglary involved stealing some personal property from a home, and then taking the homeowner's car on a joy ride. The damaged car, and most of the property, was recovered. The total loss from the crime was around $1000. The drug conspiracy involved selling ten hits of LSD to an undercover agent on two occasions. The sale price each time was $40. Smith was placed on probation for both the burglary and the drug conspiracy. As a special condition of the probation for the drug charge, he spent about eight months in a residential correctional facility undergoing treatment for a chemical dependency.

Both of these crimes occurred within about a two-month period in 1983. The appellant had just turned nineteen years old. While age is not "ordinarily relevant," U.S.S.G. § 5H1.1, it gathers meaning when assessing the circumstances of a criminal's career. Smith's career began and ended (for guideline purposes) near the eighteen-year threshold. That fact is another mitigating circumstance of Smith's career not adequately reflected in the applicable guideline range. 18 U.S.C. § 3553(b). The relatively minor nature of Smith's crimes, the briefness of his career, and his age at the time the crimes were committed make this an unusual case. The factors that

make the appellant a career offender are only barely present. The circumstances behind those factors—the details of Smith's criminal career—justify a departure. U.S. S.G. § 5K2.0.

Because the details of the appellant's criminal career are proper grounds for departure, and have been found in this case, our inquiry shifts to the quality of the record supporting those findings. The government does not argue any error in the facts found by the District Court. Accordingly, the second step of our analysis is satisfied; the District Court's findings are affirmed.

Finally, we consider the degree of the departure and the overall reasonableness of the sentence imposed by the District Court. Smith received twenty years for conspiring to sell and possessing cocaine. The applicable guideline range was between twenty-four years, four months, and thirty years, five months. "We conclude that the government is splitting hairs[,]" in seeking resentencing. *Crumb, supra,* 902 F.2d at 1340. Given the nature of Smith's criminal career, his sentence is reasonable, and in no way unduly lenient.

This is not a case like *United States v. Neil,* 903 F.2d 564 (8th Cir.1990), where a defendant had his sentence more than halved for thin reasons (he happened to be successfully married, a sometime little-league coach, and a veteran). Smith's sentence satisfies the many statutory purposes of sentencing, including just punishment and deterrence. 18 U.S.C. § 3553(a)(2). We will not disturb Smith's sentence.

Affirmed.