**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**Carland A. BOWSER, Defendant–Appellant–Cross–Appellee.**

**Nos. 90–3234, 90–3256.**

United States Court of Appeals,
Tenth Circuit.

July 19, 1991.

Michael G. Katz, Federal Public Defender, and Jill M. Wichlens, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant-cross-appellee.

Lee Thompson, U.S. Atty., and Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan., for plaintiff-appellee-cross-appellant.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

PER CURIAM.

Defendant Carland A. Bowser was convicted of two counts of distribution of a Schedule II narcotic, crack cocaine, pursuant to 21 U.S.C. 841(a)(1).[1] On appeal, defendant challenges the admission of certain evidence and the court's prohibition of his attempted cross-examination concerning the identity of a confidential informant. On cross-appeal, the government challenges the district court's downward departure from the applicable sentencing guideline.[2] We affirm.

On January 10, 1990, defendant made a hand-to-hand sale of 2.7 grams of crack cocaine to an undercover agent of the federal Bureau of Alcohol, Tobacco, and Firearms. The next day, he made a second hand-to-hand sale of 6.6 grams of crack cocaine to the same agent. Both sales were witnessed by another undercover agent.

During the second sale, the agent was "wired" with a sound transmitter, and the entire transaction was tape recorded. After the second sale, defendant attempted to evade arrest by running into a nearby department store, where his flight with police pursuit and his capture and arrest were videotaped by the store's in-house security system.[3]

Following his conviction, defendant unsuccessfully moved for a new trial, a request he renews here on appeal. Defendant first argues that the admission of certain testimony by one of the undercover agents was irrelevant and prejudicial in contravention of Fed.R.Evid. 402 and 403. The agent testified that a confidential informant told him defendant carried a gun during drug transactions and defendant would like to kill the undercover agent. R.Vol. III at 29–30.

■ We review questions concerning the admission of evidence under an abuse of discretion standard. *United States v. Cooper*, 733 F.2d 1360, 1366 (10th Cir.), *cert. denied sub nom. Threat v. United States*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984) (admission of evidence); *see also United States v. Silverstein*, 737 F.2d 864, 866 (10th Cir.1984) ("Balancing the probative value of evidence against its prejudicial effect is within the sound discretion of the trial court."). Because defendant did not object to admission of this testimony at trial, we review for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Plain errors are those errors that when viewed against the entire record " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young*, 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1984) (citation omitted); *accord United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

■ We hold that the evidence was not hearsay because it was not introduced for the purpose of proving defendant carried a gun or intended to kill the agent. Fed.R.Evid. 801(c). The statements were introduced merely to explain the officer's aggressive conduct towards the defendant. In that context the statements were relevant.

Second, defendant claims a violation of his Sixth Amendment right to confronta-

---

**1.** 21 U.S.C. § 841(a)(1) provides: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance[.]"

**2.** Appellant Bowser moved to submit this case on the briefs; the government notified the court that it did not recommend oral argument on either the appeal or the cross-appeal. After examining the briefs and appellate record, the court determined that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case was therefore ordered submitted without oral argument.

**3.** The government's evidence at trial included the testimony of the two AFT undercover agents involved in the hand-to-hand sales, the audio tape of the second transaction, the video tape of the defendant's capture and arrest, and foundation, corroboration and chain of custody witnesses.

tion when the district court sustained the government's objection to defense counsel's demand that a witness identify a confidential informant. At trial, an undercover agent testified that the agents made contact with defendant through information provided by a confidential informant. Defense counsel attempted to cross-examine the agent about the identity of the informant, but the court sustained the government's objection, citing *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Defendant claims this ruling to have been an abuse of discretion, if not an abridgement of his Sixth Amendment right of confrontation.

The right of cross-examination is fundamental. However, any reversal of a conviction on the basis of undue limitation upon cross-examination must demonstrate a denial of a due process right of confrontation as guaranteed in the Sixth Amendment, or an abuse of discretion by the trial court in limiting cross-examination. The exercise of discretion by the trial court will not be upset unless it is determined to be clearly prejudicial.

*United States v. Walton*, 552 F.2d 1354, 1364 (10th Cir.) (citations omitted), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). We hold that the trial court was correct in this matter, although for different reasons than those articulated from the bench.[4]

Determination of whether the identity of a confidential informant must be disclosed on cross-examination requires a case-by-case balancing of the public interest in protecting the flow of information from informants to the police against the individual's right to prepare his defense with relevant, helpful information essential to the fair determination of a cause. *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628. Revelation of the identity of an informant is

compelled by the Sixth Amendment only when the informant's testimony might be relevant to the charges against defendant, or when the informant was a witness to or participant in the charged conduct. *United States v. Freeman*, 816 F.2d 558, 562 (10th Cir.1987); *United States v. Halbert*, 668 F.2d 489, 496 (10th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982). The informant in the present case did not testify at trial, nor was he or she a witness to the two sales of crack cocaine. In addition, defendant made no showing that direct confrontation with the informant would assist defendant in his attempt to establish his defense at trial, that of duress, or that his case was prejudiced by the government's refusal to identify this informant. We conclude that defendant suffered no constitutional violation when the court denied his demand for the identity of the undercover agent's source of confidential information and decline to remand for new trial.

Turning to the cross-appeal, the government urges that the district court erred in its downward departure from the sentencing guidelines. The drug sales of which defendant was convicted were not his first criminal offense. In 1984, when he was twenty years old and a student on athletic scholarship at a junior college, defendant was charged in Sedgwick County, Kansas, with conspiracy to commit armed robbery, aggravated robbery, and kidnapping. Within two months, during the time he was released on bond pending trial on those charges, he was arrested for aggravated robbery in Montgomery County, Kansas. He pled guilty to all charges and was sentenced by each court to prison terms of five to twenty years. The court in Montgomery County originally released defendant to probation, but later ordered that his second

---

4. The trial court denied defense counsel's request for the informant's identity in this colloquy:

 [DEFENSE COUNSEL]: That statement he made, Your Honor, is extremely prejudicial.

 THE COURT: Well, it is but you didn't object to it. And it was probably objectionable because it was hearsay and I think the fact that you let him answer it and then now want

to know who the confidential informant was that gave him that information is—I think you've sort of created a strong [straw] man to knock down to find that out and I'm going to sustain the Government's objections, I'm not going to require him to reveal the identity of the confidential informant.

R.Vol. III at 37.

sentence be served concurrent with the Sedgwick County sentence. He had no other criminal record of either arrests or convictions as a juvenile or as an adult.

Under the sentencing guidelines, defendant's sentence for his current offenses would have been nearly tripled by the enhancement as a career offender:

[T]he presentence report assigned three points for each prior conviction, pursuant to guideline § 4A1.1(a). The report then added two points because Mr. Bowser committed the instant offense while on parole from his state sentence, see U.S.S.G. § 4A1.1(d), and one more point because he committed the instant offense less than two years after release from imprisonment on the state sentence. See U.S.S.G. § 4A1.1(e). This resulted in nine total points, for a criminal history category of IV. Coupled with an offense level of 26 based on the quantity of cocaine base involved, this yielded a guideline range of 92 to 115 months—7.6 to 9.5 years.

... Because Mr. Bowser's two prior convictions qualified as crimes of violence within the meaning of guideline § 4B1.1, he was classified as a career offender. This classification raised his criminal history category from IV to VI and his offense level from 26 to 34, yielding a new guideline range of 262 to 327 months—21.8 to 27.2 years.

Appellant's opening brief at 12–13 (citations omitted).

Pursuant to United States Sentencing Commission, *Guidelines Manual*, § 4A1.3 (Nov. 1989),[5] the district court found that although defendant technically fit within the definition of a career offender, his history of criminal conduct was significantly less serious than that of most defendants categorized as career offenders. The court stated: "I'm going to find that the two prior felony convictions both occurred ...

when he was 20 years of age and within two months of each other. I think to consider him a career offender under those circumstances would be unjust.... He also received concurrent sentences for those offenses." R.Vol. IV at 7. The court sentenced defendant to the penalty under the guidelines for his drug sales with his criminal history but without the enhancement of the career offender categorization.

■ The Sentencing Reform Act allows a sentencing court to depart from the guidelines if "the court finds that there exists [a] ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). As a threshold issue, we agree with the Eighth and Ninth Circuits that the Sentencing Guidelines permit the district court to depart downward from career offender status. *See United States v. Lawrence*, 916 F.2d 553, 554–55 (9th Cir.1990); *United States v. Smith*, 909 F.2d 1164, 1169 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990); *see also United States v. Maddalena*, 893 F.2d 815, 817–18 (6th Cir.1989) (permitting downward departure from career offender status); *United States v. Garrett*, 712 F.Supp. 1327, 1334–35 (N.D.Ill.1989) (same), *aff'd,* 903 F.2d 1105 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990).

In *United States v. Maldonado–Campos*, 920 F.2d 714 (10th Cir.1990), this court set forth a three-part test for evaluation of downward departures from the sentencing guidelines:

Downward departures based upon criminal history are made pursuant to 18 U.S.C. § 3553(b) and are reviewed under the same three-part test for evaluating

---

5. U.S.S.G. § 4A1.3 provides in pertinent part:
 There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes....

In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a ... lower criminal history category[.]

upward departures.... We first determine *de novo* whether the circumstances admit of a factor not adequately taken into account by the Sentencing Commission which would justify departure. Next, we review the district court's factual determinations supporting departure under the clearly erroneous standard. Finally, under 18 U.S.C. § 3742(e)(3) we determine whether the degree of departure was reasonable.

*Id.* at 719–20 (footnotes and citations omitted); *cf. United States v. White*, 893 F.2d 276, 277–79 (10th Cir.1990) (setting forth the three-part test for upward departures).

■ Applying these factors to the present case, the sentencing guidelines explicitly acknowledge that over-representation of the seriousness of a defendant's criminal history is an appropriate consideration for downward departure. *See* U.S.S.G. § 4A1.3 (policy statement).[6] Thus, the district court's rationale here is a permissible basis for departure from strict adherence to the guidelines. *See Maldonado–Campos*, 920 F.2d at 719 (acknowledging downward departure for over-representation of the seriousness of a defendant's criminal history as a departure "guided" by the guidelines themselves).

The district court stated three reasons for its conclusion that when the guidelines' formulas were applied to defendant's individual circumstances his criminal history was significantly over-represented. The court stated that defendant's two previous convictions (a) were committed when he was merely twenty years old, (b) were committed within two months of each other, and (c) were punished by concurrent sentences in the Kansas courts. The district court is only permitted to consider these factors in departure analysis if it finds the mitigating circumstances, in kind or degree, were not adequately considered by

the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0 (policy statement). Thus, we consider each factor utilized here by the district court, mindful that a single mitigating circumstance is sufficient to justify its determination that downward departure was appropriate. *Smith*, 909 F.2d at 1169. The issue, however, is whether the reasons employed by the trial court, taken together as the trial judge did, justify downward departure.

■ First, the guidelines advise that "[a]ge is not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.1. However, courts' interpretation of this guidance has varied as widely as the rigidity with which the courts view the guidelines themselves. *Compare United States v. Shoupe*, 929 F.2d 116, 120 (3d Cir.1991) ("Although this policy statement does not completely prohibit departures based upon age, it proscribes such departures except in extraordinary circumstances.") *with Smith*, 909 F.2d at 1169 ("While age is not 'ordinarily relevant,' U.S.S.G. § 5H1.1, it gathers meaning when assessing the circumstances of a criminal's career. [The defendant's criminal] career began and ended (for guideline purposes) near the eighteen-year threshold.") It is our interpretation that, without more, age is insufficient as a mitigating factor, but taken in the context of the other circumstances of a defendant's criminal history, it could be germane to whether the career offender category is appropriately applied to an individual defendant.

■ Our analysis is similar when applied to the district court's use of the close proximity in time between the acts from which defendant's first two convictions arose. The guidelines themselves do not specifically address the issue, and it is our

**6.** The guidelines' introduction underscores the flexibility which the Sentencing Commission intended in appropriate circumstances:

> When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.... With

[the specific exceptions set forth in the guidelines], however, the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.

U.S.S.G., Ch. 1, pt. A, intro. comment 4(b).

conclusion that this factor would have been unsuitable as an isolated rationale for downward departure. *Accord United States v. Williams*, 891 F.2d 962, 966 (1st Cir.1989) (short time span between previous robberies, on different days and in different places, rejected as weighting factor in sentencing); *cf. United States v. Harrison*, 918 F.2d 30, 31 (5th Cir.1990) (rejecting defendant's request for mitigation stemming from the fact that all five of her previous drug-related convictions had occurred in a two-year period); U.S.S.G. Ch. 3, pt. D (multiple counts), intro. comment. (guidelines for robbery "are oriented more toward single episodes of criminal behavior" rather than infractions considered to be repetitive, such as theft, fraud and drug offenses). However, the district court did not consider the short period of time between defendant's two previous robbery convictions in isolation. Rather, the court viewed the short time span in the context of defendant's age and the state court's treatment of the two convictions. Because the relationship of the factors the court considered in determining the appropriate criminal history for defendant was carefully considered and explained by the district court, we conclude that use of this factor as part of the composite rationale for downward departure in defendant's criminal history was not error.

Third, the district court noted that defendant had a history of two convictions but had been sentenced to concurrent sentences for these convictions. The guidelines are not clear how this circumstance should be considered. U.S.S.G. § 4A1.2(a)(2), applic. n. 3, advises that cases consolidated for sentencing can result in an under-representation of a defendant's criminal history. It concludes with the statement: "In such circumstances the court should consider whether departure is warranted. *See* § 4A1.3." This application note does not specifically address the question of whether separate convictions with concurrent sentences imposed because of proximity in time between the crimes could misrepresent the seriousness of the defendant's criminal history. We can find assistance, however, in the guidelines' own cited policy statement on the adequacy of criminal history category, § 4A1.3, which implies that the Commission was aware that consolidated sentencing, here extrapolated into concurrent sentences by different state courts, is generally appropriate for judicial adjustment to fit individual circumstances.

We conclude that this unique combination of factors in defendant's criminal history was not considered sufficiently by the Sentencing Commission to justify rigid application of the career offender criminal history categorization. *See Williams*, 891 F.2d at 964 (" 'there must be something "special" about a given offender, or the accoutrements of the crime committed, which distinguishes the case from the mine-run for that offense.' ") (citation omitted). We hold that the district court did not err in considering these three factors in combination to determine whether downward departure was appropriate. In reaching this conclusion, we emphasize that it is all three factors in conjunction which justify the trial court's judgment. We cannot parse the factors, holding each one separately for consideration, without unfairly abusing the trial court's judgment.

Continuing to the second prong of the *Maldonado–Campos* analysis, there is no dispute about the accuracy of the district court's specific and individualized factual determinations supporting departure. The government concedes that defendant's criminal history was composed solely of two incidents, less than two months apart, which defendant perpetrated at twenty years of age and for which he was sentenced to concurrent state prison terms. Brief of [cross-]appellant at 9. The district court explicitly concluded that by departing downward to the original offense level and criminal history category, computed prior to defendant's classification as a career offender, the sentence of ninety-six months would "more accurately reflect the defendant's true criminal history and achieve the sentencing objectives of punishment, general deterrence and incapacitation." R.Vol.

IV at 10.[7] The district court's factual determination was not clearly erroneous.

 Finally, under *Maldonado–Campos* we must determine whether the degree of downward departure was reasonable. The government argues that the sentence imposed on defendant was unreasonable under the defendant's individual history, citing 18 U.S.C. § 3742(e)(3).[8] This circuit has consistently supported a deferential standard of review of district court decisions about degree of departure. For example, "in determining the reasonableness of the degree of departure ... we should afford the trial judge due deference and not 'lightly overturn determinations of the appropriate degree of departure.'" *United States v. Russell*, 905 F.2d 1450, 1456 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990) (quoting *White*, 893 F.2d at 279); *see also United States v. Banashefski*, 928 F.2d 349, 350 (10th Cir.1991) (review application of the sentencing guidelines to facts under "due deference" standard); *United States v. Jackson*, 921 F.2d 985, 991 (10th Cir.1990) ("A district court has considerable discretion in appraising a defendant's criminal history."); *United States v. Johnson*, 911 F.2d 403, 406 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991) (due deference given to district court application of guidelines to the facts).

The sentencing guidelines specify that, "[i]n considering a departure under [U.S.S.G. § 4A1.3], the Commission intends that the court use, as a reference, the guideline range for a defendant with a ... lower criminal history category[.]" U.S.S.G. § 4A1.3 (policy statement). In the instant case, the district court followed this directive. The jump into the career offender category was made in one step under U.S.S.G. § 4B1.1. The district court reversed that single step when it reasonably determined, based on factual determinations that satisfy the guidelines and are not clearly erroneous, that placing defendant in the career offender criminal history category significantly over-represented the seriousness of his criminal history. The district court was in the best position to make a decision about the proper sentence for this defendant. The district court judge acted after studying the information provided by the probation officer's presentence report, after viewing the defendant in the courtroom, and after a two-day jury trial. In addition, we note that the district court did not depart below offense level 26 and criminal history category IV, computed for defendant's crime and criminal history without the career offender enhancement. According the district court the deference due it, we will not disturb this sentencing decision.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

BALDOCK, Circuit Judge, concurring in part and dissenting in part.

I concur in that part of the judgment affirming the defendant's conviction. I write separately, however, because I cannot agree with that part of the judgment

---

7. The district court did not discuss the possibility or probability of recidivism as required by *Maldonado–Campos,* 920 F.2d at 720. However, because *Maldonado–Campos* was decided after the district court sentenced defendant, the district court's lack of explicit consideration of this factor is not fatal to its determination that departure was appropriate.

8. The government arrived at this conclusion solely through the numerical evaluation that since defendant had spent four years of his adult life out of prison and had been convicted on six counts of felony charges, he had committed an average of 1.5 felonies per non-incarcerated year of his adult life, rendering defendant's placement in the career offender category reasonable and removal from that category unreasonable. Logically, this reasoning ignores the four years defendant spent in state prison, where he conceivably could have committed and been convicted of other felonies. More fundamentally, the proposition that there is some numerical average of felonies over time which make career offender status irrevocable belies the clear directive of the Sentencing Commission itself, which recognized that in the end, the sentencing judge is in the best position to weigh the individual situation and history of each convicted criminal to determine whether departure from the guidelines is appropriate. U.S.S.G. § 4A1.3 (policy statement).

affirming the sentence with its downward departure from career offender status.

The presentence report indicates that defendant has two prior convictions for crimes of violence. Defendant was convicted in Montgomery County, Kansas of conspiracy to commit armed robbery, aggravated robbery and kidnapping in connection with the February 5, 1984, robbery of a convenience store. Defendant also was convicted in Sedgwick County, Kansas of aggravated robbery in connection with the April 1, 1984, robbery of another convenience store. Defendant used a handgun in both robberies. Finally, defendant was convicted of distribution of crack cocaine, a controlled substance offense, in connection with the sale of crack cocaine to undercover agents on January 10–11, 1990. Defendant was paroled from his state sentences on January 19, 1989. While on parole, defendant became a mid-level distributor of crack cocaine. II R. ¶¶ 13, 32; III R. 85–88. Defendant qualifies as a career offender under U.S.S.G. § 4B1.1 because he committed the instant controlled substance offense while at least eighteen years of age and because he has two prior felony convictions involving crimes of violence.

U.S.S.G. § 4A1.3, p.s. (1990) allows a district court to depart downward when a criminal history category overrepresents seriousness. Departure is a possibility when "the defendant's *conduct* is exaggerated by the criminal history score." *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990) (emphasis supplied). In *United States v. Maldonado–Campos*, 920 F.2d 714, 719, 719 n. 2 (10th Cir.1990), we determined that a downward departure based upon § 4A1.3 is tied to 18 U.S.C. § 3553(b),[1] which allows departure only in the presence of "an aggravating or mitigat-

ing circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Given the Sentencing Commission's comprehensive treatment of the factors involved in sentencing and the Congressional goals of uniformity and proportionality in sentencing, we have determined that "departures should rarely occur." *United States v. Jackson*, 921 F.2d 985, 989 (10th Cir.1990) (en banc). Downward departures from career offender status based on overstated seriousness of past criminal history should occur only in truly unusual cases. *United States v. Adkins*, 937 F.2d 947 (4th Cir.1991). The district court departed downward solely on the authority of § 4A1.3 because defendant's prior violent crimes occurred when he was twenty years old and within a two-month period. IV R. 9. The district court also relied upon the fact that defendant received concurrent sentences for these crimes. None of these factors, alone or in combination, justify departure because all were adequately considered in formulating the Sentencing Guidelines. This is not "an atypical case, one to which a particular guideline [here § 4B1.1] linguistically applies but where *conduct* significantly differs from the norm." *See* U.S.S.G. ch. 1, pt. A intro., § 4(b), p.s. (emphasis added). *See also United States v. Williams*, 891 F.2d 962, 967 (1st Cir.1989) (truly unusual circumstances resulting in meaningful atypicality needed for departure). In deciding whether the Sentencing Commission adequately considered the mitigating circumstances relied upon by the district court in granting a downward departure under § 4A1.3, our review is *de novo*. *Maldonado–Campos*, 920 F.2d at 719–20.

---

1. 18 U.S.C. 3553(b) provides in pertinent part: **Application of guidelines in imposing sentence.**—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2).
. . . .

Merely because the defendant was twenty years old when he committed the two separate armed robberies does not justify departure. Age has been considered in formulating the Guidelines. *See* 28 U.S.C. § 994(d)(1) (Commission instructed to consider relevance of age). The Sentencing Commission has provided a framework to evaluate offenses committed prior to age eighteen, *see, e.g.,* U.S.S.G. §§ 4A1.2(d) (criminal history computation), 4B1.1 (career offender provision), but otherwise has counseled that "[a]ge is not ordinarily relevant in determining whether a sentence should be *outside* the guidelines." U.S.S.G. § 5H1.1, p.s. (emphasis supplied). The only example given by the Commission of when age might justify a downward departure involves post-offense considerations: "Age may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a[n alternate] form of punishment (*e.g.,* home confinement) might be equally efficient and less costly than incarceration." *Id.* (emphasis in original). *See also United States v. Doe,* 921 F.2d 340, 347 (1st Cir.1990) (discussion of example); *United States v. Carey,* 895 F.2d 318, 324 (7th Cir.1990) (same). A district court may consider age in the context of deciding where to sentence within the guideline range. *See United States v. Mondello,* 927 F.2d 1463, 1470 (9th Cir. 1991); *United States v. Lara–Velasquez,* 919 F.2d 946, 955 n. 11 (5th Cir.1990); *United States v. Garcia,* 919 F.2d 1478, 1481 (10th Cir.1990). But only extraordinary circumstances warrant a departure based in whole or in part upon age. *See United States v. Lopez,* 938 F.2d 1293 (D.C.Cir.1991); *United States v. Shoupe,* 929 F.2d 116, 120 (3rd Cir.1991); *Mondello,* 927 F.2d at 1470; *United States v. Daiagi,* 892 F.2d 31, 32 (4th Cir.1989). *See also United States v. Pena,* 930 F.2d 1486, 1495 (10th Cir.1991) (under U.S.S.G. § 5H1.6 family ties and responsibilities were relevant, given extraordinary circumstances including aberrational nature of defendant's conduct). Departures based in whole or in part upon age are appropriate only when "substantial atypicality" distinguishes a particular case from the typical case de-scribed by each guideline. *United States v. Norflett,* 922 F.2d 50, 54 (1st Cir.1990). Merely because the defendant was twenty when he committed two armed robberies is not extraordinary; violent crime among the young is all too common. *See Shoupe,* 929 F.2d at 120; *United States v. Summers,* 893 F.2d 63, 69 (4th Cir.1990) (nothing extraordinary about being a twenty-three-year-old adult; departure based upon age was unreasonable). Likewise, downward departure due to defendant's age is inconsistent with deterrence and protection of the public, *see* 18 U.S.C. § 3553(a)(2)(A)–(C), and the Sentencing Commission's view of the relevance of criminal history.

According to the Commission:

A defendant's past criminal history is directly relevant to [the] purposes [of sentencing set forth in 18 U.S.C. § 3553(a)(2) ]. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, *the likelihood of recidivism and future criminal behavior must be considered.*

U.S.S.G. ch. 4, pt. A, intro. comment. (emphasis supplied). In this case, the district court failed to consider recidivism in its downward departure decision pursuant to § 4A1.3. This court excuses the omission because it predated our decision in *Maldonado–Campos,* 920 F.2d at 720; however, the requirement that recidivism be considered in a downward departure is a statutory directive, 18 U.S.C. § 3553(b), 3553(a)(2)(C), and is discussed in the guidelines, U.S.S.G. ch. 4, pt. A, intro. comment.; § 4A1.3 p.s. & comment. (backg'd) (noting that criminal history score for younger defendants may be inadequate given previous lenient treatment and such defendants "may pose a greater risk of serious recidivism"). *See also United States v. Lawrence,* 916 F.2d 553, 554 (9th Cir.1990) (dis-

trict court considered recidivism in departing downward from career offender provision). Consideration of recidivism seems especially appropriate in this case given that defendant's second armed robbery was committed within two months of his first and the instant drug offenses were committed within one year of defendant's release on parole. This case does not involve a sustained break in criminal activity other than when defendant was incarcerated. *See Shoupe,* 929 F.2d at 122 (Rosenn, J., dissenting) (considering a ten year break in criminal activity as a factor warranting downward departure from career offender provision).

Departure is not justified on the basis that defendant's prior armed robberies occurred within two months of one another. Nor is it justified on the basis that the Montgomery County, Kansas court decided that defendant's sentence should run concurrently with the earlier imposed Sedgwick County, Kansas sentence. The Commission has implemented the Congressional directive that career offenders be sentenced "to a term of imprisonment at or near the maximum term authorized." 18 U.S.C. § 994(h). The guidelines provide ample authority on how to handle defendant's previous two convictions, contrary to this court's statements that the guidelines do not specifically address these issues. *See* Ct.Op. at 1024–25.

The career offender provision provides that whether felony convictions are merged or counted separately is determined with respect to U.S.S.G. ch. 4 pt. A. *See* U.S.S.G. § 4B1.2(3) & comment. (n. 4). Separate counting is appropriate when the cases are unrelated. U.S.S.G. § 4A1.2(a)(2). Cases are merged only if they "(1) occurred on a single occasion, (2) were part of a common scheme or plan, or (3) were consolidated for trial or sentenc-

ing." U.S.S.G. § 4A1.2, comment. (n. 3). This methodology precludes merger of the defendant's criminal convictions for armed robberies which occurred within two months of one another. It also precludes merger of the defendant's criminal convictions merely because one state district court decided that defendant's sentence should run concurrently with that imposed by another state district court. In no way were the defendant's armed robbery convictions "consolidated for trial or sentencing," U.S.S.G. § 4A1.2, comment. (n. 3); thus, the court's reliance on this provision concerning misrepresentation of seriousness is anomalous[2] and misplaced. The explicit recognition of a rule determining whether offenses should be merged represents implicit rejection of a rule which would allow merger based on a short time span between different offenses or based upon the interaction of different sentences imposed by different courts. *See Shoupe,* 929 F.2d at 120 (rejecting departure from career offender status because armed robbery and subsequent burglary were merely nine months apart). As noted by the Fifth Circuit, "career offender status was meant to apply not only to those defendants with long criminal histories but also to those who repeatedly commit drug-related or violent crimes, irrespective of the timeframe." *United States v. Harrison,* 918 F.2d 30, 31 (5th Cir.1990) (rejecting departure from career offender status because five controlled substance violations occurred within two years).

I cannot agree with this court's conclusion that the "unique combination of factors in defendant's criminal history was not considered sufficiently by the Sentencing Commission to justify rigid application of the career offender criminal history categorization." Ct.Op. at 1025. The court recognizes that, taken alone, each of the factors would be an improper ground for

---

**2.** Plainly, this case does not involve consolidated sentencing. Defendant was sentenced by different courts on different dates for different offenses. Even if it did, however, the court's observation that "consolidated sentencing ... is generally appropriate for judicial adjustment to fit individual circumstances," Ct.Op. at 1025, would be of little benefit to the defendant, for the guidelines make it clear that such consolidated sentencing may well "result in a criminal history score that underrepresents the seriousness of defendant's criminal history and the danger that he presents to the public." U.S.S.G. § 4A1.2, comment. (n. 3). In such cases, the district court is advised to consider *upward,* not downward, departure pursuant to § 4A1.3. *Id.*

departure. None warrants departure because all were "adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See* 18 U.S.C. § 3553(b). Given that none of the factors warrants departure, the "three factors in combination," Ct.Op. at 1025, likewise do not, and a downward departure for an over-representation of seriousness is inappropriate.[3] *See* 18 U.S.C. § 3553(b).

The idea that "[w]e cannot parse the factors, holding each one separately for consideration, without unfairly abusing the trial court's judgment," Ct.Op. at 1025, is not only inconsistent with this court's analysis (which ultimately finds each factor wanting, thus necessitating combination), but also with the numerous cases which have cast aside factors which do not permit departure. *See, e.g., Shoupe*, 929 F.2d at 119–20 (each factor independently analyzed; departure unwarranted because all factors adequately considered); *United States v. Studley*, 907 F.2d 254, 257–58, 260 (1st Cir.1990) (each factor relied upon by district court must be examined for atypicality; each factor adequately considered and departure unwarranted); *Williams*, 891 F.2d at 966 ("Draining the impermissible ingredients from the stew leaves precious little in the departure pot."); *United States v. Aguilar–Pena*, 887 F.2d 347, 351 (1st Cir.1989) (each factor examined for atypicality; each factor adequately considered and departure unwarranted); *United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir.1989) (each of two factors examined; each factor adequately considered). If every factor relied upon by the district court was adequately con-

sidered by the Sentencing Commission, the factors in combination cannot change that fact. We have cautioned that " '[a] court should not mold typical criminal conduct or defendant characteristics into atypicality merely to achieve a departure from the guidelines,' " because such an approach threatens uniformity. *Maldonado–Campos*, 920 F.2d at 720 n. 3 (quoting *Studley*, 907 F.2d at 257). Today's opinion is an invitation to circumvent the guidelines by combining factors adequately considered by the guidelines, claiming that the combination of factors is unique, and then departing. As stated by the First Circuit:

> Regardless of how well founded, a belief by the sentencing judge that the punishment set by the Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure under the sentencing system mandated by Congress. The crux of the matter is whether the guidelines have taken the principal sentencing factors into account. When they have, the sentencing court is not then at liberty to depart, regardless of whether the judge's independent consideration of those factors reasonably differs from the Commission's.

*Studley*, 907 F.2d at 260.

For the above reasons, I respectfully dissent.

**3.** In *United States v. Smith*, 909 F.2d 1164, 1169–70 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991), defendant was convicted in connection with his cocaine distribution activities. *Id.* at 1165. The Eighth Circuit determined that the district court correctly departed downward from the career offender provision because the defendant's previous criminal career "was neither extensive nor long." *Id.* at 1169. The prior convictions involved burglary resulting in a loss of $1,000 and sales of LSD for $400 to an undercover agent. The offenses occurred within two-month period while defendant was nineteen and he received

probation. *Id.* Whatever the merits of the Eighth Circuit's resolution, our case is distinguishable. It is difficult to classify defendant's repeated armed robberies of convenience stores (one of which involved kidnapping), with the attendant danger to human life, as "relatively minor" insofar as a criminal career is concerned. *But see United States v. Senior*, 935 F.2d 149, 150–51 (8th Cir.1991) (affirming downward departure from career offender status based upon overstated seriousness of past criminal history which included three robberies and two controlled substance offenses).