7 F.3d 1045
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
F. Dale CRABTREE, Defendant-Appellant.
 No. 92-6330.
 United States Court of Appeals, Tenth Circuit.
 Sept. 3, 1993.
 
 Before EBEL, Circuit Judge, RONEY, Senior Circuit Judge,** and KELLY, Circuit Judge.
 ORDER AND JUDGMENT*
 RONEY, Circuit Judge.
 
 
 1
 F. Dale Crabtree appeals his convictions on four counts of bankruptcy fraud and money laundering alleging: improper exclusion of evidence that was relevant to his defense of lack of intent to defraud, insufficient evidence on the money laundering charge, improper prosecutorial comment during closing argument, and an improper sentence enhancement and a requirement of restitution. We affirm.
 
 
 2
 This trial followed a prior trial in which Crabtree was acquitted on eight out of thirteen counts, with a jury deadlocked eleven to one for acquittal on the other five counts, on which he was retried here. A co-defendant in that trial, Ralph J. Cubbler, III, was acquitted on all counts. The charges grew out of the Chapter 11 bankruptcy proceedings of Crabtree, his wife, certain trusts which he had set up for his children, and The Orchard Company, a family partnership.
 
 
 3
 The fraud charges of which Crabtree was convicted involved (1) bankruptcy fraud in failing to disclose as an asset of The Orchard Company $100,000 of proceeds from the sale of a Renoir painting, (2) bankruptcy fraud in failing to surrender to the bankruptcy trustee a gas deposit refund check in the amount of $2,233.61, (3) bankruptcy fraud in presenting a false affidavit in bankruptcy concerning loans to defendant by Richard Dulaney, and (4) money laundering related to transferring $50,000 of the $100,000 Renoir proceeds to an account to conceal the funds from the bankrupt estate. The court dismissed the fifth count on mail fraud.
 
 
 4
 Crabtree's defense at trial was two-fold: (1) he did not intend to defraud anyone, and (2) his lack of criminal intent was manifest because he acted with the advice of counsel.
 
 
 5
 A brief review of the facts furnishes the background for each of the four charges. Crabtree is an attorney who practiced law and invested in the oil and gas industry. Having made a great deal of money in the 1980's, he transferred some property to trusts set up for the benefit of his children for estate planning and taxation purposes.
 
 
 6
 Crabtree set up a partnership involving him and his wife, individually, and the children's trusts, known as The Orchard Company. The Orchard Company purchased a mansion and spent approximately $2,000,000 remodeling. During the remodeling, a Renoir painting was purchased. Crabtree and his wife later transferred their partnership shares to the children's trusts so that by mid-1986, the only partners in The Orchard Company were the children's trusts.
 
 
 7
 Crabtree, his wife, and the children's trusts also purchased investments in a bank from individuals referred to as the Campbell Group. As the result of a lawsuit related to the breach of the investment purchase agreement, the Campbell Group obtained a money judgment against Crabtree, his wife, and the children's trusts in 1987. After entering the judgment, the court ordered Crabtree, his wife, and the children's trusts not to convey or transfer any property.
 
 
 8
 Prior to the entry of judgment for the Campbell Group, Crabtree agreed with Christie's Auction House that Christie's would sell the Renoir painting. Christie's sold the painting on May 12, 1987 for $342,250 and sent a check for the sale proceeds payable to The Orchard Company. Crabtree had the check returned in exchange for checks equal to one-half of the proceeds issued to each of his children individually. At trial, Crabtree claimed that he did this because the painting belonged to the children individually as a result of an inter vivos gift and that the painting never belonged to The Orchard Company. The court ruled, however, that, as a matter of law, the transfer to the children was invalid. The substitute checks were deposited into a bank account belonging to Catherine Adams, Crabtree's mother-in-law, at the Rhode Island Hospital Trust Bank.
 
 
 9
 In December 1987, Crabtree, his wife, the children's trusts, and The Orchard Company filed for Chapter 11 bankruptcy. On the day of filing, $100,000 of the Renoir proceeds remained in Catherine Adams' bank account at the Bank of Boston.
 
 
 10
 During the bankruptcy proceeding, Crabtree received a $2,233.61 deposit refund check from the gas company that serviced the mansion owned by The Orchard Company. Crabtree did not deposit the money in any of the bankruptcy estates but instead deposited it into Catherine Adams' account.
 
 
 11
 Also during the proceedings, Crabtree received a $75,000 loan from a friend. Crabtree executed notes for the loans but later retrieved them. Crabtree later swore in an affidavit that the loans were made to Ralph Cubbler, an associate of Crabtree's, rather than to Crabtree. Crabtree claimed that the affidavit was prepared by his attorney, but his attorney testified he knew nothing about the affidavit.
 
 EXCLUSION OF EVIDENCE
 
 12
 Each of the crimes charged required specific intent. The trial court excluded certain pieces of evidence that Crabtree argues were necessary to his defense of lack of intent, so that the exclusion deprived him of the ability to present a full defense. The trial court's decision should not be disturbed, however, unless the court abused its discretion. United States v. Bowser, 941 F.2d 1019, 1021 (10th Cir.1991).
 
 
 13
 The trial court granted the Government's motion in limine excluding evidence of the collection efforts of the Campbell Group after it obtained state court judgments against Crabtree, his wife, and the children's trusts. The court concluded that the evidence was irrelevant to the argument of lack of intent. Crabtree argues that the evidence should have been admitted because it established that he was stripped of almost all of his assets, making it necessary to find money to support his family. While this evidence may establish a desire and a need for money, it does nothing to make the existence of intent to defraud unlikely.
 
 
 14
 The trial court also sustained a motion in limine excluding evidence of attorney's fees and expenses recovered from Crabtree, finding that evidence of attorney's fees and expenses recovered or charged by the Campbell Group's attorney, the bankruptcy trustee, the trustee's lawyer and Crabtree's lawyer irrelevant to the issue of intent. As with the evidence of the Campbell Group's collection efforts, this evidence is relevant to Crabtree's need and desire for money but is irrelevant to the existence or non-existence of intent to defraud.
 
 
 15
 Crabtree argues that when the court prevented him from testifying to the validity of the inter vivos gift of the Renoir painting to his children he was prevented from testifying to facts that established his lack of fraudulent intent. The record reveals, however, that the court did not prevent either Crabtree or his wife from testifying to the transfer as it related to Crabtree's intent. The court previously ruled that Crabtree had not validly made a gift and merely prevented Crabtree from testifying as to why the transfer was, in fact, a valid inter vivos gift. The objection sustained by the court was to Crabtree's attempt to testify to the legal requirements of an inter vivos gift. Specifically, Crabtree attempted to testify that the transfer required donative intent. Upon objection, the court stated, "I have previously held that this is not a gift and another court has held you are collaterally estopped from attacking them in this proceeding. So ... [Crabtree] can't testify what constitutes a gift. He can testify what he did, what he meant to do and thought." The court clearly stated that it would permit Crabtree to testify to his intent but not that the transfer was legally valid. Crabtree received ample opportunity to testify to his intent.
 
 
 16
 The trial court sustained a general objection at trial to the testimony of one of Crabtree's attorneys as to the validity of a state court judgment against Crabtree. The court had previously ruled that the validity of the judgment could not be attacked. Crabtree argues that demonstrating why the judgment was invalid would emphasize his lack of intent. While the witness was not permitted to testify to the invalidity of the judgment, the court allowed the witness to testify about his advice to his client based on his conclusion that the judgment was invalid. The permitted testimony was the evidence that would negate intent. Testimony to the validity of the judgment was not necessary to negate intent.
 
 
 17
 The trial court sustained the Government's motion in limine to exclude evidence of Crabtree's acquittal on the other eight counts in the first trial. Crabtree argues that because the Government introduced evidence that was used as evidence of the crimes he was acquitted of, the jury should have been given the opportunity to weigh the impact of the evidence in light of his acquittal on those charges. The Government is collaterally estopped from introducing evidence of a prior acquittal if the prior acquittal determined the ultimate issue of fact, but not where the evidence simply relates to the alleged criminal conduct for which the defendant was acquitted. Dowling v. United States, 493 U.S. 342 (1990). '[A] judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted.' United States v. Sutton, 732 F.2d 1483, 1492 (10th Cir.1984) ( quoting United States v. Viserto, 596 F.2d 531, 537 (2d Cir.), cert. denied, 444 U.S. 841 (1979)). The evidence that was introduced simply related to the conduct for which Crabtree was acquitted.
 
 
 18
 All of these evidentiary rulings are subject to the abuse of discretion standard of review. United States v. Bowser, 941 F.2d 1019, 1021 (10th Cir.1991). The record reveals that the trial court did not err in refusing to admit this evidence offered by Crabtree.
 
 
 19
 SUFFICIENCY OF THE EVIDENCE ON THE MONEY LAUNDERING CHARGE
 
 
 20
 The money laundering charge was based on the transfer of $50,000 of the $100,000 Renoir proceeds to conceal the funds from the bankrupt estate. The facts are briefly: Crabtree caused Christie's to issue the checks in the children's names individually and gave them to Cubbler, his business associate. Cubbler deposited the money in Catherine Adams' account with the Rhode Island Hospital Trust Bank, then transferred the money to her Bank of Boston account, and finally transferred it to her account with the City National Bank of Norman. Cubbler had power of attorney over all three accounts and used the funds to pay Crabtree's expenses.
 
 
 21
 Crabtree argues that the evidence was insufficient to support the charge of criminal conduct. In order to convict a defendant of laundering money, the Government must prove that the defendant conducted or attempted to conduct a financial transaction knowing that it involved proceeds from illegal activity with intent to promote certain illegal activities including bankruptcy fraud. 18 U.S.C. § 1956(a)(1)(A)(i) (1988). Conducting includes "initiating, concluding, or participating in initiating or concluding a transaction." 18 U.S.C. § 1956(c)(2) (1988). Crabtree argues that the evidence was insufficient to establish his knowledge or involvement.
 
 
 22
 Viewing the evidence in a light most favorable to the Government, Crabtree's conviction must be affirmed. See Schmuck v. United States, 489 U.S. 705 (1989). The evidence is sufficient to support a finding that Crabtree set up the system whereby the money was transferred to the Catherine Adams' accounts. Crabtree arranged the power of attorney that gave Cubbler control of Catherine Adams' accounts. Crabtree had the Renoir proceeds issued to the children individually and then allowed Cubbler to control the checks knowing that he controlled Catherine Adams' accounts. Cubbler deposited and transferred the funds through Adams' accounts and ultimately used them to pay Crabtree's expenses. Viewing this circumstantial evidence of Crabtree's knowledge in the light most favorable to the Government, a reasonable jury could have concluded that Crabtree knew that the transaction involved the proceeds from the sale of the Renoir painting, which had been illegally deposited in Adams' accounts.
 
 IMPROPER PROSECUTORIAL COMMENT
 
 23
 During closing argument, the prosecutor commented that Crabtree failed to call one of his lawyers as a witness. Contrary to Crabtree's argument, the comment was not improper because it was made during second closing arguments after Crabtree told the jury during his opening statement that the lawyer would be called and commented during closing argument that he relied on the advice of counsel at all times. United States v. Abello-Silva, 948 F.2d 1168, 1183 (10th Cir.1991).
 
 SENTENCING ENHANCEMENT
 
 24
 The trial court enhanced Crabtree's sentence by two levels after it concluded that Crabtree obstructed justice by lying at trial. U.S.S.G. § 3C1.1. Crabtree argues that it was improper to apply the enhancement when the only basis for application was the trial court's conclusion it did not believe his testimony. False testimony is a proper basis for employing the enhancement. United States v. Dunnigan, 112 S.Ct. 2272, 61 U.S.L.W. 4180 (1993). The record supports the trial judge's conclusion that Crabtree testified falsely.
 
 RESTITUTION AS PART OF THE SENTENCE
 
 25
 The court further ordered supervised release for each count, community service, and restitution in the amount of $102,233.61. 18 U.S.C. §§ 3663-64 (1988).
 
 
 26
 Crabtree argues that restitution is proper only when there is a victim of the crime. He argues that there were no victims of his actions. While Crabtree is correct that restitution is payable only to victims, United States v. Wright, 930 F.2d 808, 810 (10th Cir.1991), the estate was a victim.
 
 
 27
 Crabtree further argues that restitution was improper because he has no present means to pay the restitution and potential future earning capacity is insufficient justification. Future earning capacity, however, can justify restitution. United States v. Rogat, 924 F.2d 983 (10th Cir.1991); United States v. Morrison, 938 F.2d 168, 172 (10th Cir.1991). The order of restitution was within the guidelines and was not an abuse of discretion. United States v. McIlvain, 967 F.2d 1479, 1480 (10th Cir.1992).
 
 
 28
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3
 
 
 **
 Honorable Paul H. Roney, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation