**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Men Van NGUYEN, Defendant–Appellant.**

No. 92–8032.

United States Court of Appeals, Tenth Circuit.

April 13, 1993.

William U. Hill, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., D. of Wyo., Cheyenne, WY, with him on the brief), for plaintiff-appellee.

Maynard Grant, (Tim Newcomb with him on the brief), Cheyenne, WY, for defendant-appellant.

Before McKAY, Chief Judge, McWILLIAMS, Circuit Judge, and SAFFELS, District Judge *.

SAFFELS, Senior District Judge.

Defendant-appellant Men Van Nguyen appeals his sentence imposed after pleading guilty to two counts of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The defendant was sentenced to concurrent terms of 78 months on each count. Three other counts were dismissed at the time of sentencing. We exercise jurisdiction under 18 U.S.C. § 3742 and affirm.

In May 1991 in Cheyenne, Wyoming, a confidential informant gave information to a law enforcement agent with the Wyoming Division of Criminal Investigation that defendant Men Van Nguyen was selling cocaine. Throughout the month of June 1991, the agent made five controlled buys of cocaine and crack cocaine totalling over 20 grams. Early in July 1991, the confidential informant told the agent that the defendant knew he was being set up. The Grand Jury then indicted the defendant on July 12, 1991, and on July 29, 1991, the defendant was arrested. Prior to his arrest, the defendant's Cheyenne

apartment was searched pursuant to a search warrant and a .357 Magnum revolver was seized. No drugs were recovered from the apartment.

Findings of fact underlying the defendant's sentence are reviewed for clear error. *United States v. Mays,* 902 F.2d 1501, 1503 (10th Cir.1990). The district court's interpretation of the sentencing guidelines is reviewed *de novo. United States v. Pinedo-Montoya,* 966 F.2d 591, 595 (10th Cir.1992).

Mr. Nguyen first contends the district court erred in imposing a two level enhancement for possession of a handgun. Pursuant to United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(b)(1) (Nov. 1992), the defendant's sentence may be increased by two levels if he possessed a dangerous weapon, including a firearm. Application Note 3 to the commentary of U.S.S.G. § 2D1.1(b)(1) states, "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The commission gave the example of an unloaded hunting rifle in a closet as a situation where it would be clearly improbable that the weapon was connected with the offense.

In *United States v. Goddard,* 929 F.2d 546, 549 (10th Cir.1991), we considered the application of this section and found that the Guidelines only require proof by a preponderance of the evidence to support a finding that it was not "clearly improbable" that the firearm was connected with the drug trafficking offense.

Mr. Nguyen argues that because the .357 magnum revolver was found wrapped in a towel, inside a guitar case, inside the closet of the apartment where he lived, it was not readily accessible and there could be no connection between the gun and the offense. On the facts of this case, however, there was an abundance of evidence from which the district court could find that Mr. Nguyen possessed the firearm in connection with the drug trafficking offenses.

* The Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation.

As conceded by Mr. Nguyen, the revolver is a type of weapon often associated with drug activity. Several of the drug transactions took place directly outside the door of the defendant's apartment, and one transaction was conducted inside the apartment. The drugs which were sold to the agent were retrieved by Mr. Nguyen from his apartment. It is not inconceivable that the gun could be retrieved at the same time the defendant was getting the drugs from the apartment. Mr. Nguyen bragged to the government's confidential informant that he had pulled a gun on his dealer to avoid getting "ripped off," although he later told the agent it was his friend who brandished the gun. Finally, Mr. Nguyen told the informant he had purchased a .357 magnum, the description of which matched the revolver found in the defendant's apartment. Based upon this evidence, there was sufficient factual support to apply the two level enhancement for possession of a firearm.

The defendant next contends the court had discretionary authority to depart downward from the sentencing guidelines on the basis that the multiple drug buys, which greatly inflated the quantity of the drug for sentencing purposes, was "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The defendant further contends the court did not recognize that it had the authority to depart for this reason, making this issue reviewable as an incorrect application of the guidelines. *See* 18 U.S.C. § 3742(a)(2).

■ As the defendant recognized, a district court's decision not to depart downward from the recommended sentencing range is not reviewable, provided the court recognized it had the authority to depart. *United States v. Westmoreland,* 911 F.2d 398 (10th Cir. 1990); *United States v. Davis,* 900 F.2d 1524, 1528–30 (10th Cir.), *cert. denied,* 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990).

■ We have examined the sentencing transcript and are satisfied the district court

was aware of its discretion to depart downward from the guidelines, but chose not to depart. The court made the following statement:

I am of the belief that the officers who continued their drug buys had just cause to do so, as there was good reason to believe that you were connected to an oriental criminal element in the Denver area.

I have already observed that in the opinion of the court the sentencing guidelines are harsh and unfair. They provide for a minimum of 78 months and a maximum of 97 months for your offense level.

I have already pointed out to you that you have, in effect, gotten the benefit of four offense levels off by being given two levels off for acceptance of responsibility and not being increased by two levels for obstruction of justice.

Even though I feel that you have been dishonest with the court by concealment of your ability to speak English, by the manner in which you have continually tried to wiggle around for your own advantage, rather than facing your punishment like a man, I still feel that it is just under these circumstances to give you the low end of the guidelines.

Frankly, if this were a pre-guideline case I feel that the court would light on a sentence of 48 to 60 months rather than 78 months; however, I have no alternative. You asked me to forgive you and ignore your guilt; I can't do that.

The district court made specific findings that the multiple buys were made with just cause and the defendant was fortunate the court did not enhance the sentence for obstruction of justice. Implicit in those findings was a decision not to depart downward.[1] The court further found it was just to sentence at the low end of the guidelines. While the district court expressed its opinion that the guidelines are unfair and a lighter sentence might have been imposed in a pre-guideline case, the court acknowledged it could not ignore the defendant's guilt. Noth-

---

1. The defendant contends that even if the court believed the agent was justified in making the multiple drug buys, this still does not prevent the

court from departing downward. While the defendant's position may be correct, it is clear to us that the district court was declining to depart.

ing in the court's statement indicates ignorance of its discretion to depart downward. To the contrary, the court's comments indicated concern about the defendant's dishonest conduct, but a conscious decision to sentence at the low end of the 78 to 97 month guideline range. Earlier in its statement, the court noted it had been generous in its rulings regarding the defendant. We find no incorrect application of the sentencing guidelines.

■ Finally, the defendant alleges the district court erred in including the weight of sodium bicarbonate powder, in which there were small pieces of crack cocaine, in determining drug quantity for sentencing. The district court found that the weight of the cocaine was 20.2 grams, which raised by two levels the base offense level. The court seemingly understood that to be pure cocaine.

For the purpose of this appeal, the parties entered in to the following stipulation regarding the cocaine:

The 12.9 gram cocaine sale of June 12, 1992, set forth in Count 3 of the indictment, consisted of: (1) 15 rocks of cocaine base weighing 2.6 grams; and (2) a 10.3 gram "eight-ball" comprised of small pieces of yellowish cocaine base mixed with white sodium bicarbonate powder.

The parties do not dispute that the total amount of cocaine in whatever mixture is over 20 grams.

■ Whether a substance constitutes a mixture containing a detectable amount of a controlled substance for the purpose of the sentencing guidelines is reviewable *de novo* as an interpretation of the guidelines. *United States v. Robins*, 967 F.2d 1387, 1389 (9th Cir.1992).

The defendant argues that crack cocaine is not typically combined with sodium bicarbonate powder and its inclusion in the sentencing calculation grossly exaggerates the nature of the offense, contrary to the intent of the guidelines.

In *Chapman v. United States*, —— U.S. ——, ——, 111 S.Ct. 1919, 1924, 114 L.Ed.2d 524 (1991), the Court discussed the intent of Congress to establish a "market-oriented" approach for sentencing, in which the entire weight of the distributed mixture determines the sentence rather than the amount of the pure drug. Thus, the form of the drug would not matter and retailers who help keep the street market functioning would be punished as severely as top-level dealers. *Id.* We have held this to be a reasonable sentencing scheme. *United States v. Mendes*, 912 F.2d 434 (10th Cir.1990). Further, the Court gave "mixture" its common ordinary meaning.

A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." Webster's Third New International Dictionary 1449 (1986). A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 Oxford English Dictionary 921 (2d ed. 1989). *Chapman*, —— U.S. ——, 111 S.Ct. at 1926.

Based upon the principle involved in the sentencing guidelines and the ordinary definition of the term mixture, the substance in question contained a detectable amount of the controlled substance, crack cocaine, and the calculation was proper. This is not an absurd case, but one in which the sodium bicarbonate could have remained after the distillation into the final cocaine base form. In addition, the defendant purchased the drug in this form and sold it in this form. By including the total weight of the mixture, the intent of Congress to punish the retailer who distributed the drug in whatever form is furthered.

■ Finally, although the district court was under the impression that the drug was pure, under the correct application of the sentencing guidelines the sentence would be the same. Therefore, any error by the district court was harmless. *See United States v. Moore*, 919 F.2d 1471, 1478 (10th Cir.1990).

**AFFIRMED.**