UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey JONES, Defendant–Appellant.

No. 94–1970.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1995.

Decided May 24, 1995.

Barry Rand Elden, George Jackson, argued, Pamela Pepper, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Robert A. Handelsman, argued, Chicago, IL, for defendant-appellant.

Before ALDISERT,* BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The district court sentenced the defendant, Jeffrey Jones, to thirty years imprisonment following his conviction on cocaine charges. On appeal, Jones argues that the court made several errors in sentencing him as a career offender under the United States Sentencing Guidelines ("Guidelines"). We dismiss in part and affirm in part.

## I.

On July 9, 1993, Jose Hernandez and Miguel Sanchez, government informants working with the Drug Enforcement Administration ("DEA"), met Frederick Anderson at a gas station when they asked Anderson for directions. Hernandez told Anderson he was a beeper and telephone salesman who was in the Chicago area "to go see friends and talk business." The two men exchanged beeper and telephone numbers.

Four days later, Hernandez and Anderson spoke by telephone (the record does not disclose who placed the call). Hernandez stated he was ready to talk about business and the men agreed to meet the next day at a fast-food restaurant near the gas station where they first met. Anderson brought Jones, whom he introduced as "Jefferson," to the meeting. When Hernandez asked why Anderson brought a friend to a meeting where they would be discussing illegal business, Anderson responded that Jones was his partner.

Hernandez told Anderson and Jones that he was bringing "pianos" to Chicago and would sell them for $22,000 or $23,000 per kilogram for two or three, or $20,000 per kilogram if the men bought ten. Anderson asked Jones whether he could "get enough people together so that we could get the price of $20,000." Jones responded affirmatively.

After this meeting, Hernandez spoke with Anderson by telephone several times, but admitted at trial that he never talked to Jones. At one point, Anderson stated that he and Jones wanted to buy four kilograms and said they had "eighty-four [thousand dollars]." On August 2, 1993, Hernandez and Anderson agreed to meet at the same restaurant. Anderson said he would bring his friend, which Hernandez understood to mean Jones.

Jones and Anderson arrived at the restaurant in a car driven by Jones. Anderson informed Hernandez that they had only $46,000 and agreed with Hernandez when he said they would only be able to purchase two kilograms. When Hernandez asked about the money, both Jones and Anderson responded that it was in a small box in the trunk. Sanchez walked to the back of the car while Jones started the car so Anderson could press the trunk release button. Sanchez lifted the box out of the hatchback and showed it to Hernandez, who saw the money inside. Sanchez then began to walk away from the car and started taking his hat on and off. Jones stated "I don't like what your friend is doing. He's doing something that's not right." DEA agents promptly arrested Anderson and Jones.

After his arrest, while at the DEA offices, Jones made a statement admitting that he dealt cocaine. He said that since November, 1992, his income had come from cocaine trafficking and that he sold between ½ and 1 ounce of cocaine per day. Jones stated that he received most of his cocaine from Anderson. Jones informed the DEA how much he paid Anderson for the cocaine and how much he sold it for after using a cutting agent to increase its quantity. Finally, Jones discussed another dealer from whom he purchased cocaine, including a quarter-pound in November, 1992, and ounces on a daily basis.

Jones and Anderson were indicted in the Northern District of Illinois on one count of conspiracy to possess with intent to distribute cocaine and one count of attempting to possess cocaine, both in violation of 21 U.S.C. § 846. After jury selection, Anderson pleaded guilty. Jones went to trial and was con-

* The Honorable Ruggero J. Aldisert, of the United States Court of Appeals for the Third Circuit, sitting by designation.

victed of both counts. The district court sentenced him as a career offender under U.S.S.G. § 4B1.1. The court refused to reduce Jones's sentence for being a minor participant or for acceptance of responsibility and also declined to depart downward from his sentence. The guidelines indicated a range of 360 months to life and the court sentenced Jones to 360 months imprisonment and 96 months supervised release.

## II.

On appeal, Jones challenges virtually all of the district court's sentencing decisions. He argues that he should have received a downward departure from his sentence and objects to being sentenced as a career offender. He also contends that the court erred in refusing to reduce his sentence for being a minor participant and for accepting responsibility. Finally, Jones seeks a remand for resentencing in accord with recent amendments to the guidelines.

## A.

■■■ Jones first contends that the district court erroneously concluded that it had no power to depart downward from his career offender sentence. We do not have jurisdiction to review a district court's exercise of its discretion to deny a departure from the guidelines. *United States v. Wright,* 37 F.3d 358, 361 (7th Cir.1994). We can, however, review its decision if the court's "refusal to depart ... is based on an erroneous legal conclusion about [its] authority to depart." *United States v. Poff,* 926 F.2d 588, 590–91 (7th Cir.) *(en banc), cert. denied,* 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). At first glance, Jones's argument appears to have some merit, for if the court believed, as it stated several times, that the guideline sentence was too severe *and* the court knew it had the ability to depart, why did it refuse to do so? A review of the court's discussion of this issue illustrates, however, that the court thought it could depart but ultimately decided against taking that action.

This court has never directly addressed the question whether a court can depart from a career offender sentence because the

guidelines significantly over-represent the seriousness of the defendant's criminal history or his future danger. *But see United States v. Springs,* 17 F.3d 192, 195 n. 3 (7th Cir.) (no jurisdiction to review court's refusal to depart since it recognized its ability to do so), *cert. denied,* — U.S. ——, 115 S.Ct. 375, 130 L.Ed.2d 326 (1994). Other Circuits have determined that a district court can depart on these grounds. *See, e.g., United States v. Fletcher,* 15 F.3d 553, 556–57 (6th Cir.1994); *United States v. Reyes,* 8 F.3d 1379, 1383–88 (9th Cir.1993); *United States v. Shoupe,* 988 F.2d 440, 445–47 (3d Cir.1993); *United States v. Beckham,* 968 F.2d 47, 54 (D.C.Cir. 1992); *United States v. Bowser,* 941 F.2d 1019, 1023 (10th Cir.1991); *United States v. Pinckney,* 938 F.2d 519, 520–21 (4th Cir. 1991); *United States v. Smith,* 909 F.2d 1164, 1169–70 (8th Cir.1990), *cert. denied,* 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991).

Based on the decision in *Reyes,* Jones argued to the district court that it should depart from the guideline range. The court then postponed Jones's sentencing hearing for 8 days in order to review the career offender argument he presented in his objections to the presentence report ("PSR"). At the rescheduled sentencing hearing, the court discussed *Reyes* and said it too may have departed in that case. *See United States v. Gaines,* 7 F.3d 101, 105–6 (7th Cir.1993) (reference to case allowing departure indicates an awareness of authority to depart); *see also United States v. Morrison,* 46 F.3d 127, 131 (1st Cir.1995) (same). Specifically, the court stated:

[E]ssentially what the majority did in [*Reyes* ] was say that departure was justified ... because you had somebody ... whose career offender status was essentially justified by small drug transactions, and it put him essentially in the same category as those trafficking in significantly larger amounts of drug[s].

And I do not say in this regard that I think that had I been the trial judge in *Reyes* I would have declined to depart. *I may very well have departed.* But so far as I can tell from *Reyes,* we're really not dealing with the same kind of defendant. This

is a defendant who essentially stole more than once in his life. I think it would not be unfair to characterize him as a thief at least for a number of years of his life. He was a drug possessor. He was a deliverer of drugs. At a time when he was a convicted felon he was in possession of a gun. In addition to his conviction record, he has a very long arrest record.

It's very difficult to read this presentence report without coming to the conclusion that this defendant fits more closely with what Congress was after in terms of dealing with career offenders than the actual technical definition in which he also fits, and I think that was part of the problem with *Reyes....*

Leaving aside the technical definition, I don't think it is unjust, in fact I think it is perfectly just to call this defendant a career criminal. So I think the guideline is appropriate in this case.

Clearly, the court believed it had the power to depart from the career offender sentencing range, but determined, as it had complete discretion to do, that Jones did not warrant such a departure.

Jones points to other statements by the court that he contends show that the court believed it did not have the authority to depart. After stating that it thought the minimum guideline sentence was "very high," the court said:

> the fact of the matter is that I will not depart from the guidelines in this case because I do not believe that I am authorized to depart simply because I would impose, for example, a 20–year sentence rather than the very stern sentence called for by the sentencing guidelines.

This statement does not negate the court's earlier recognition of its ability to depart based on certain factors that it did not find present in this case. Instead, the court acknowledged that it could not depart simply because it thinks the guidelines, as a whole, are too harsh. *See, e.g., United States v. Scott,* 914 F.2d 959, 964 (7th Cir.1990) (general dissatisfaction with the guidelines does not constitute a reasonable basis for departure); *see also United States v. Nguyen,* 1 F.3d 972, 974 (10th Cir.1993) (no error in

court's recognition that it could not depart downward simply because it thought the guidelines were unfair and it would have imposed · a lighter sentence pre-guidelines); *Beckham,* 968 F.2d at 54 ("[S]entences established for various crimes under the guidelines cannot be set aside based merely on their perceived severity."); *United States v. Norflett,* 922 F.2d 50, 53 (1st Cir.1990) (court could not depart from career offender sentence simply because it thought it incommensurate with the crime). Because the court exercised its discretion and denied the departure, we dismiss this portion of Jones's appeal for lack of appellate jurisdiction.

### B.

Jones also contends that the crimes for which he was convicted, attempt and conspiracy, cannot support a career offender sentence because the enabling legislation for U.S.S.G. § 4B1.1, 28 U.S.C. § 994(h), does not include these offenses as among those requiring career offender status. We have rejected this argument twice recently and refuse to revisit those decisions. *See United States v. Garrett,* 45 F.3d 1135 (7th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2015, 131 L.Ed.2d 1013 (1995); *United States v. Damerville,* 27 F.3d 254 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 445, 130 L.Ed.2d 355 (1994).

### C.

■■■ Jones next objects to the district court's refusal to reduce his sentence two-levels for being a minor participant in the criminal activity. U.S.S.G. § 3B1.2 defines a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." A defendant "must be substantially less culpable than the average participant" in order to warrant this departure. *United States v. Kerr,* 13 F.3d 203, 206 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994). We will uphold the district court's decision that Jones did not meet this standard unless it is clearly erroneous. *United States v. Durman,* 30 F.3d 803, 807 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995).

The evidence demonstrates that the district court did not err in refusing this reduction. While Anderson made the first contact with the Hernandez and Sanchez and later talked to them by telephone, Jones attended the next meeting at which the parties discussed the drug transaction. Anderson described Jones as his "partner," and asked Jones whether he could find enough people to join them in buying sufficient quantities of cocaine to receive a reduced price. Jones responded affirmatively. Moreover, on the day of the arrest, Jones drove Anderson to the transaction site. Jones and Anderson both directed Hernandez to a small box containing the money and Jones started the car so Anderson could open the trunk and Sanchez could remove the money. We agree with the district court that the fact that Jones drove to the transaction and did not talk to Hernandez or Sanchez in any depth does not mandate a finding that he was a minor participant. On the other hand, we will not adopt the government's position that these same aspects of Jones's behavior necessarily indicate his leadership role by showing that he was able to conceal his involvement in, and limit his liability for, the crimes. Instead, we look to all of the relevant facts, including Jones's post-arrest statement that Anderson supplied him with cocaine to sell, that demonstrate Jones was not "substantially less culpable" than Anderson. Thus, the district court did not err. *See United States v. Rosalez–Cortez,* 19 F.3d 1210, 1220–21 (7th Cir.1994); *United States v. Gunning,* 984 F.2d 1476, 1484 (7th Cir.1993); *United States v. Johnson,* 965 F.2d 460, 469 (7th Cir.1992).

### D.

■ Jones also argues that the court erred by refusing to reduce his sentence two-levels for his acceptance of responsibility. U.S.S.G. § 3E1.1. The acceptance of responsibility reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *United States v. Salvador,* 18 F.3d 1380, 1382 (7th Cir.1994) (quoting U.S.S.G. § 3E1.1 application note 2). A failure to plead guilty does not automatically preclude

this reduction, but only in rare situations will a defendant who has been convicted after a trial receive it. *United States v. Corral–Ibarra,* 25 F.3d 430, 439–40 (7th Cir.1994). In these circumstances, the district court's determination whether to grant the reduction should "be based primarily upon pre-trial statements and conduct." U.S.S.G. § 3E1.1 application note 2; *see Corral–Ibarra,* 25 F.3d at 440. Jones bears a high burden in proving his entitlement to a reduction for acceptance of responsibility. *United States v. Curtis,* 37 F.3d 301, 309 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

■ Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility ... the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993) (quoting U.S.S.G. § 3E1.1 application note 5). Therefore, we will affirm the court's decision unless it is clearly erroneous. *Corral–Ibarra,* 25 F.3d at 440.

■ Jones made no statements before trial about his guilt or remorse, and at trial he contested the factual predicates of the charged offenses. Attached to the PSR, Jones submitted his version of the events. He wrote:

> Although I know that there is a possibility of a smaller sentence if I say that I am guilty of all that the government accused me of, I cannot do so because it is not true . . .
>
> I was not a member of any conspiracy with Frederick Anderson knowing in my own mind that he was going to buy drugs. I did not supply him with any of the money he brought to the [restaurant] and I was not going to receive the cocaine that he was going to buy.

Jones then made the following statement that he contends evinced his acceptance of responsibility:

> I know that I shouldn't have gone with Anderson, and I am sorry for that. At the

time of my arrest I was using drugs heavily, most of which I would buy from Anderson, and although Anderson didn't promise me anything, I hoped that he might give me some cocaine either for free or at least for a lot less money ...

I am sorry for the problems and the shame that I and my drug addiction have caused me, my family and my friends....

In addition, the PSR noted that Jones had completed a drug abuse education program before trial, a valid factor for the court to consider in awarding this reduction. *United States v. Bruder*, 945 F.2d 167, 173 (7th Cir.1991) (*en banc*); U.S.S.G. § 3E1.1 application note 1.

 Jones's version of the events unequivocally demonstrates that he has not accepted any responsibility for the crimes of which he has been convicted. The other language relied on by Jones merely indicates his remorse over using drugs and his "mistake" in accompanying Anderson to the transaction site. A " 'grudging and incomplete admission, accompanied by an excuse to minimize his own culpability, does not indicate acceptance of responsibility.' " *Rosalez–Cortez*, 19 F.3d at 1220 (quoting *United States v. Aquilla*, 976 F.2d 1044, 1053 (7th Cir.1992)). Jones had to demonstrate that he "*clearly* recognize[d] and affirmatively accept[ed] responsibility for his conduct." *United States v. Dvorak*, 41 F.3d 1215, 1217 (7th Cir.1994) (emphasis in original). He did not do so. Not only did the district court not err in refusing to reduce Jones's sentence for acceptance of responsibility, but the court probably could not have appropriately granted such a reduction. *See, e.g. United States v. Martinson*, 37 F.3d 353, 357 (7th Cir.1994) (error in reducing sentence where defendant went to trial and continued to deny any criminal intent), *cert. denied*, ─ U.S. ─, 115 S.Ct. 1256, 131 L.Ed.2d 136 (1995); *Salvador*, 18 F.3d at 1382 (reversing reduction because defendant had been convicted of crimes and still portrayed himself as nothing

more than a drug courier in an attempt to diminish his role in the conspiracy).

### E.

 Finally, Jones seeks a remand for resentencing under the 1994 amendment to U.S.S.G. § 4B1.1 application note 2. The PSR indicated that Jones had two prior felony controlled substance offenses. The instant offense involved 2 kilograms of cocaine, resulting in a base offense level of 28. U.S.S.G. § 2D1.1(c)(8). This amount, in light of Jones's prior drug convictions, dictated a statutory maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(B).

The PSR suggested, and the district court agreed, that Jones qualified for sentencing as a career offender. U.S.S.G. § 4B1.1.[1] This section mandates different offense levels based on the defendant's "Offense Statutory Maximum," which, at the time Jones was sentenced, the guidelines defined as "the maximum term of imprisonment authorized for the ... controlled substance offense." U.S.S.G. § 4B1.1 application note 2. The statutory maximum of life imprisonment under 21 U.S.C. § 841(b)(1)(B) resulted in a base offense level of 37. As a career offender, Jones had a Criminal History Category of VI. U.S.S.G. § 4B1.1. These figures dictated a sentencing range of 360 months to life. After noting that this range seemed high, the district court imposed a 360 month sentence.

In 1994, application note 2 to U.S.S.G. § 4B1.1 was amended to define "Offense Statutory Maximum" as:

the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), 841(b)(1)(b), ...). For example, where the statutory maximum term of imprisonment under 21 U.S.C.

---

**1.** The career offender guideline applies to defendants who were eighteen at the time of the instant offense that was a crime of violence or a controlled substance offense and who have two

or more prior felony convictions for crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1.

§ 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying prior drug convictions, the "Offense Statutory Maximum" for the purposes of this guideline is twenty years and not thirty years.

Thus, if Jones were sentenced today, his offense statutory maximum under § 4B1.1 would be 40 years, *see* 21 U.S.C. § 841(b)(1)(B), mandating a base offense level of 34. This would result in a sentencing range of 262–327 months, the maximum of which is less than Jones's present sentence.

A court can resentence a defendant under amendments that reduce a guideline sentence that the Sentencing Commission has designated to apply retroactively. *See* 18 U.S.C. § 3582(c), 28 U.S.C. § 994(u). The Commission has determined that amendment 506, the amendment to application note 2, applies retroactively. U.S.S.G. § 1B1.10(a), (c). Jones's argument thus may well have merit, but he has made it before the wrong court. The power to reconsider a sentence lies with the district court, *see* 18 U.S.C. § 3582(c)(2), and not the court of appeals. We therefore dismiss this portion of Jones's appeal without prejudice to his right to move the district court for appropriate relief.

For the foregoing reasons, we dismiss in part and affirm in part.