UNITED STATES COURT OF APPEALS
**Filed 8/20/96**
FOR THE TENTH CIRCUIT

———

UNITED STATES OF AMERICA,    )
    )
    Plaintiff-Appellee,    )
    )
v.    )    No. 96-1040
    )    (D.C. No.  95-CR-10-1-N)
MIKE KING, also known as Lamont    )    (Dist. of Colo.)
Pennomon, also known as Mike Woods,)
also known as Eric Larry Goins,    )
also known as Lamont Pennon,    )
    )
    Defendant-Appellant.

———

**ORDER AND JUDGMENT**[*]

———

Before **ANDERSON, BARRETT, and MURPHY,** Circuit Judges.

———

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); Tenth Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Mike King (King) appeals from his conviction and sentence

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

following his plea of guilty to one count of distribution and possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a) and § 841(b)(1)(A)(iii). The relevant facts are not in dispute.

On or about January 4, 1995, King, while in California, packaged approximately 506 grams of crack cocaine in an express mail envelope and instructed one Jessica Navarro (Navarro) to address the package and mail it to her apartment in Denver, Colorado. Thereafter, King flew to Denver to receive the package at Navarro's apartment. The package was intercepted in Denver and opened pursuant to a federal search warrant.

Officers effected a controlled delivery of the cocaine to Navarro's apartment on January 6, 1995. King received the package at Navarro's apartment from an undercover police officer posing as a postal delivery person. King intended to distribute the cocaine base inside the package to persons in the Denver area.

King was arrested outside of Navarro's apartment pursuant to an arrest warrant on January 9, 1995. Upon entering the apartment, officer found the package containing the cocaine on a coffee table in the first floor living room. During a subsequent search, pursuant to a warrant, officers found a pistol in an upstairs bedroom between the mattresses of a bed.

King, Navarro, and one Tanya Mason, were charged with distribution and possession with intent to distribute cocaine and

with conspiracy to do so. Thereafter, King pled guilty to one count of distribution and possession with intent to distribute cocaine base.

The probation officer who drafted King's presentence investigation report recommended an upward adjustment to King's offense level pursuant to U.S.S.G. § 2D1.1(b)(1), which applies to offenses under 21 U.S.C. § 841(a)(1). It requires a two level upward adjustment "[i]f a dangerous weapon (including a firearm) was possessed." King objected to the upward adjustment:

> The Defendant [King] contends that there should be no adjustment for possession of a weapon in this case. The Defendant contends that although the weapon was in the apartment, at the time of the seizure of the controlled substances, the weapon belonged to Ms. Navarro and was for her use and protection even though it was originally paid for by Mr. King. The Defendant further contends . . . that there is no evidence that Mr. King knew that the gun was still in the apartment on January 6, 1995, rather than in the possession of Ms. Navarro who was in California.

(R., Vol. 1, Tab 5, Plea Agreement and Statement of Facts Relevant to Sentencing at 5).

The district court rejected King's objections and sentenced him to 292 months imprisonment and five years of supervised release. King's sentence reflected a two level adjustment pursuant to § 2D1.1(b)(1) for possession of a firearm.

On appeal, King contends that the district court erred when it applied the two level upward adjustment pursuant to § 2D1.1(b)(1) for possession of a firearm. We review the district court's legal

interpretation of the sentencing guidelines de novo; we review the district court's factual findings for clear error. United States v. Bruce, 78 F.3d 1506, 1509 (10th Cir. 1996), petition for cert. filed, (U.S. June 20, 1996) (No. 95-9389); United States v. Johnson, 42 F.3d 1312, 1320 (10th Cir. 1994), cert. enied, ___ U.S. ___ (1995).

The two level adjustment under § 2D1.1(b)(1) for the possession of a weapon reflects the increased danger of violence when drug traffickers possess weapons. United States v. Contreras, 59 F.3d 1038, 1040 (10th Cir. 1995). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1(b)(1) comment. (n.3). The government bears the initial burden "of proving by a preponderance of the evidence that the gun was proximate to the drug offense." United States v. Lang, 81 F.3d 955, 964 (10th Cir. 1996); United States v. Earls, 42 F.3d 1321, 1326 (10th Cir. 1994), cert. denied, ___ U.S. ___, (1995). Once the government meets its burden, the onus shifts to the defendant to show that it is clearly improbable that the weapon was related to the offense. United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir.), cert denied, ___ U.S.___ (1995).

The district court properly applied these standards in sentencing King:

> [T]he court finds that the defendant had purchased this Briko Arms pistol Model 59 for Jessica Navarro, and the

officers who made the arrest of the defendant were told that it was for Navarro's protection.

The weapon enhancement [§ 2D1.1(b)(1)] applies if the weapon is present at the location, unless it is clearly improbable that the weapon was connected with the offense.

Given the fact that the defendant purchased this weapon for Ms. Navarro, as I find, given the fact that he and Ms. Navarro and others were selling drugs from this location, as I find, and given the fact that the defendant came back to the location to sell drugs and was selling drugs from that location, I find the . . . inference that's justified [is] that the weapon was very likely present at the location where it was intended to be present to afford protection in these drug activities.

It is true that the defendant had just come in from California and it is also true, as I understand it, that Ms. Navarro was gone, that she was in California. I don't think that detracts from the inference that I'm drawing, which is that the weapon was in the residence for Ms. Navarro to use, and it was available for the defendant's use for protection, including protection in the drug transactions that were taking place there.

I am unable to find on this record that it is clearly improbable that the weapon was not connected with the offense.

(R., Vol. 3 at 34-5).

We hold that the district court did not err in finding/concluding that § 2D1.1(b)(1) applied in sentencing King. See, e.g., Contreras, 59 F.3d at 1039-40 (§ 2D1.1(b)(1) enhancement proper where agents found a loaded rifle under a couch in the living room and 238 pounds of marijuana in an attached garage approximately 25 feet from where the rifle was found); Earls, 42 F.3d at 1326 (§ 2D1.1(b)(1) enhancement proper where officers found a partially loaded gun in defendant's bedroom at the time of his

arrest along with amounts of marijuana consistent with distribution); <u>United States v. Roederer</u>, 11 F.3d 973, 981-83 (10th Cir. 1993)(§ 2D1.1(b)(1) enhancement proper where officers, who had arrested defendant for distributing cocaine in a parking lot, subsequently, pursuant to a search warrant, searched defendant's apartment and found a loaded revolver); <u>United States v. Nguyen</u>, 1 F.3d 972, 973-74 (10th Cir. 1993)(§ 2D1.1(b)(1) enhancement proper where .357 magnum revolver was found in a wrapped towel inside a guitar case in a closet in the apartment where defendant lived and where several drug transactions took place directly outside of the

apartment and one transaction was conducted inside the apartment).

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge