165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
James C. SEGARS, Defendant-Appellant
 No. 98-1409.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 27, 1998.
Decided Oct. 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 91 CR 2. Robert L. Miller, Jr., Judge.
 Before Hon. THOMAS E. FAIRCHILD, Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, Circuit Judges.
 
 ORDER
 
 1
 James Segars was convicted in 1991 of possession with intent and conspiracy to distribute cocaine, and of using a firearm in relation to drug trafficking (18 U.S.C. § 924(c)). He was sentenced to 327 months on the cocaine counts and 60 months, consecutive, on the firearm count, totaling 387 months. He was convicted of other offenses, but those sentences were shorter than and ran concurrently with the cocaine counts. In 1993, these convictions and sentences were affirmed. U.S. v. Newman, 9 F.3d 113 (7th Cir.1993) (unpublished).
 
 
 2
 In 1994, Segars brought a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. He claimed ineffective assistance of counsel, but his motion was denied and this court affirmed. Segars v. U.S., 114 F.3d 1192 (7th Cir.1997) (unpublished). The validity of the conviction on the firearms count came in question, however, because the Supreme Court decided Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), narrowing the definition of "use" of a firearm previously applied in this circuit and elsewhere. We did not have the trial record before us and the recitation of facts in the 1993 order on appeal suggested possession of a firearm but not "use" as defined in Bailey (nor "carrying"). We did not vacate the conviction of the firearm count, but remanded, directing the district court to determine whether it could stand. We permitted the district court, depending on the outcome, to review whether to enhance the sentence on the cocaine counts by reason of possession of a firearm during the offenses.
 
 
 3
 On remand, Judge Miller vacated the firearms conviction and resentenced Segars, applying the November 1997 Sentencing Guidelines and adjusting the Criminal History Category downward by reason of events occurring just before the resentencing. Judge Miller found, as he had in 1991, that 40 to 50 kilograms of cocaine purchased and distributed by Newman were in furtherance of Segars' conspiracy with Newman and reasonably foreseeable by Segars. The quantity produced a base offense level of 34. Judge Miller again increased the offense level to 37 because Segars supervised three of the more than five criminal participants in the conspiracy. He then enhanced the offense level to 39 because he found Segars had possessed a firearm on at least two occasions.
 
 
 4
 In 1991, Segars had five criminal history points, placing him in Criminal History Category III, but in 1998, because of developments later discussed, Segars was placed in Category II. A base offense level of 39 along with Criminal History Category II produced a sentencing range of 292 to 365 months. Judge Miller selected a sentence in 1998 of 353 months.
 
 
 5
 For comparison, the 1991 offense level of 37 along with Criminal History Category III had produced a sentencing range of 262 to 327 months; Judge Miller had selected 327, the top of the range, and the consecutive 60 months for the conviction on the firearms count had resulted in a total of 387 months. Segars again appealed.[1]
 
 
 6
 I. Whether the district court exceeded its power under our mandate.
 
 
 7
 In U.S. v. Parker, 101 F.3d 527, 528 (7th Cir.1996), we rejected an interpretation of "language in some of our previous cases that might be read to say that a remand limits the issues open to consideration on remand only if the opinion or order directing it so states." We held that "[i]f the opinion identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error." Id.
 
 
 8
 Applying Parker, it is arguable that our 1997 mandate limited the district court to determining whether the conviction on the firearms count could be sustained, and, if not, increasing the sentence on the cocaine counts to reflect possession of a firearm. If so limited, the district court was not authorized to deal with other matters, including recomputation of the Criminal History Category and a reduction in the sentence which resulted from that. The government did not appeal from the reduced sentences, and we would affirm without considering Segars' other claims.
 
 
 9
 It so happens, however, that our court issued two decisions shortly after Parker which involved motions under § 2255 and the vacation of § 924(c) firearms convictions because of Bailey, as here. U.S. v. Binford, 108 F.3d 723 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 2530, 138 L.Ed.2d 1029 (1997); U.S. v. Smith, 103 F.3d 531 (7th Cir.1996), cert. denied, 520 U.S. 1248, 117 S.Ct. 1861, 137 L.Ed.2d 1061 (1997). Those cases applied the "sentencing package" concept, holding that "[w]hen a sentencing package is unbundled, such as when part of a sentence is vacated, we have held that, in order to effectuate its original sentencing intent, the district court may 'rebundle' the package by resentencing the defendant." Binford, 108 F.3d at 728. Judge Miller relied on these decisions in deciding to resentence Segars.
 
 
 10
 In the light of Binford and Smith, we do not consider our mandate as limiting resentencing. Both parties and the district court understood that full resentencing was appropriate. In addition, this happens to be a situation where the two-level increase in offense level was very likely to increase the term of imprisonment by more than the 60 months imposed for the conviction of the § 924(c) firearms count. An offense level of 37 along with a Criminal History Category of III resulted, in 1991, in a sentencing range of 262 to 327 months (with 327 imposed). An offense level of 39, and the same Criminal History, would result in a range of 324 to 405 months. The sentence on remand would have to have been at the bottom of the range to shorten Segars' sentence. This was not brought to our attention when we decided the appeal in 1997, and the prospect of increasing Segars' total sentence above 387 months as the outcome of Segars' § 2255 motion would have presented a significant problem which we would have addressed.
 
 
 11
 We proceed to deal with the merits of Segars' arguments that there was error in the resentencing.
 
 II. Calculation of Criminal History Category
 
 12
 In the 1991 sentencing, Segars had five criminal history points putting him in Category III. One point was for a state court sentence of probation in 1987, one was for intimidating a witness, one point was for a sentence of probation in 1989 for driving while intoxicated, and two points were because he engaged in the cocaine conspiracy while on these sentences of probation. A few days before the 1998 sentencing, the state court entered orders expunging the 1987 and 1989 convictions and sentences. Judge Miller did not assign points for the two sentences, but did assign two points because Segars engaged in the conspiracy while on probation. U.S.S.G. § 4A1.1(d). He reasoned that Segars was no less on probation by virtue of the infirmities of the underlying convictions, and that the guideline had been adopted to deter those under criminal justice supervision from engaging in criminal conduct.
 
 
 13
 Segars challenges these two points and the government agrees that they should not have been counted. As the government points out, Application Note 4 defines a "criminal justice sentence" under § 4A1.1(d) as "a sentence countable under § 4A1.2...." Section 4A1.2(j) states that "[s]entences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." We conclude that the two points should not have been counted and the government does not argue that Category I does not adequately reflect the seriousness of Segars' past criminal conduct or the likelihood that he will commit other crimes. Therefore, we will remand for correction of this error.
 
 
 14
 III. Did the court clearly err in denying a reduction
 
 
 15
 for acceptance of responsibility?
 
 
 16
 Segars put the government to its burden of proof at trial, was convicted, and falsely stated to the probation officer preparing the presentence report in 1991 that another individual did all the things Segars was said to have done. There was no suggestion of acceptance of responsibility in 1991. Application Note 2 to U.S.S.G. § 3E1.1 makes very clear that the adjustment for acceptance of responsibility was not intended to apply to someone who insists on a trial, except for "rare situations." Segars' history is far from similar to the example of an exception given in the Note. The Note goes on to say "[i]n each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." As of the 1998 sentencing, Segars was still a defendant who had insisted on a trial, and there were no pretrial statements or conduct supporting a finding of acceptance of responsibility.
 
 
 17
 Segars' present claim is based in part on a letter he wrote to Judge Miller in November 1997, after our remand. It can be read as a admission of guilt, an expression of remorse, and a representation that he had changed directions. He also shows an exemplary record in prison, and significant rehabilitation efforts including earning a G .E.D., 18 hours of college credit, completion of a drug education program, vocational training, and high marks as a worker.
 
 
 18
 Judge Miller commended the 1997 admission, but found it untimely, coming more than six years after the trial and after Segars had challenged his conviction by appeal and by a § 2255 motion and appeal. He concluded that Application Note 2 teaches that Segars is not entitled to a reduction for acceptance of responsibility. There is no clear error in failing to find that this was one of the rare instances referred to in Note 2.
 
 
 19
 IV. Was Judge Miller confused as to the extent of his discretion?
 
 
 20
 Mr. Segars (probably his counsel) points to several phrases in Judge Miller's oral remarks at sentencing, and to his finding that only two of the eight factors listed in Application Note 1 to U.S.S.G. § 3E1.1 (his admission of conduct and his post-offense rehabilitation efforts) applied to Segars' situation as demonstrating that Judge Miller was confused about his discretion and had the mistaken impression that the list of factors was exhaustive. We do not read Judge Miller's remarks that way. Counsel does not suggest any additional factor Judge Miller might have considered, and we are confident that if Judge Miller could have thought of any additional relevant factors which might make this case one of the "rare situations" referred to in Note 2, he would have considered them.
 
 
 21
 Counsel also argues that Segars was entitled to have the court consider whether he should be given a downward departure because of rehabilitative efforts and that Judge Miller's omission of a discussion of that issue indicates a lack of understanding that a downward departure could be granted. Silence concerning downward departure does not demonstrate the judge's belief that he had no authority to depart if deemed appropriate. We have no authority to review the denial of a downward departure unless the judge denied it because he incorrectly believed he had no authority. U.S. v. Lewis, 79 F.3d 688, 692 (7th Cir.1996).
 
 
 22
 V. Was there clear error in finding the amount of cocaine
 
 
 23
 attributable to and reasonably foreseeable to Segars?
 
 Judge Miller found in 1998 that:
 
 24
 Mr. Segars had an open-ended agreement with Newman and the other conspirators to sell cocaine. The drug quantities discussed in the September 1991 sentencing memorandum were in furtherance of that conspiracy and were reasonably foreseeable to Mr. Segars. Those quantities involved 40 to 50 kilograms of cocaine, so the base offense level for today's sentence, as it was in 1991, is 34.
 
 
 25
 Segars argues that he was a mere street dealer in South Bend who personally sold only small quantities, less than 3.5 kilograms in total (which would yield an offense level of 28). The 40 to 50 kilograms charged to him included deliveries of 38 kilograms by Salwan Asker to Newman in Detroit.
 
 
 26
 Judge Miller found, in 1991, that Newman's efforts to obtain the cocaine were in furtherance of the conspiracy of which Segars was a member, that Segars was therefore criminally accountable for Newman's efforts, and that these efforts were reasonably foreseeable to Segars. On appeal, Segars complained that he was sentenced according to an amount of cocaine not reasonably foreseeable by him, and that he had nothing to do with Asker, who had supplied the 38 kilograms. Accordingly, Segars contends that he should have had a base offense level of 26, not 34.
 
 
 27
 This court not only affirmed, but said,
 
 
 28
 [t]his Court finds that Segars' arguments are frivolous in light of the evidence of his deep involvement in the conspiracy. Segars was supplied with large quantities of cocaine by Meert at the Meat Market. He also arranged and supervised trips by Winter, Robert Segars, and Bryant to Detroit to deliver money to Newman and Washington and return with cocaine. Thus, the record satisfies the foreseeability, standard articulated in Edwards and Young, supra.
 
 Newman, 9 F.3d at 64.[2]
 
 29
 By now the finding of foreseeability is law of the case, and we have no reason to review it further.
 
 
 30
 Segars argues that a 1992 amendment to the guidelines and commentary require a different outcome in 1998. Judge Miller noted that in 1991 U.S.S.G. § 1B1.3(a)(1) did not require that conduct of other conspirators be reasonably foreseeable to the defendant, yet an application note so required and amendment 439 moving the requirement into the text of the guideline was clarifying. See U.S. v. McDuffy, 90 F.3d 233, 235 (7th Cir.1996). He found no material change on the point.
 
 
 31
 We are not persuaded that illustrations in the Commentary, cited by Segars, required any different factual inquiry. On the first appeal, this court noted Segars' "deep involvement in the conspiracy" and his supervision of others. He was more than a street dealer, like those whose sentences were vacated in U.S. v. Willis, 49 F.3d 1271 (7th Cir.), cert. denied, 516 U.S. 846 (1995).
 
 
 32
 VI. Was it clear error not to award a two level reduction
 
 
 33
 for being a minor participant?
 
 
 34
 U.S.S.G. § 3B1.2(b) provides for a decrease of two levels "[i]f the defendant was a minor participant in any criminal activity." Application Note 3 defines "minor participant" as "any participant who is less culpable than most other participants ...." The commentary later suggests comparison with "the average participant." U.S. v. Jones, 55 F.3d 289, 293 (7th Cir.), cert. denied, 516 U.S. 857, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995).
 
 
 35
 Judge Miller did not address Segars' request for this reduction. Both in 1991 and 1998, he added three levels because Segars supervised others. In 1991, he had commented that Segars' management role continued throughout the conspiracy and was greater than Mr. Hart, although less than that of Ms. Washington. Newman described Segars as his "main man" in South Bend. In the light of Segars' supervisory role and the remarks of this court about his role on the earlier appeal, it would be difficult, if not impossible, to find Segars less culpable than most other members of the conspiracy, and there is no suggestion that Judge Miller failed to address the issue because he believed he could not. There is no clear error.
 
 
 36
 VII. Did the court err in sentencing Segars to 240 months
 
 
 37
 for his conviction under 18 U.S.C. § 1956(a)
 
 
 38
 )(1)(A) (money laundering)?
 
 
 39
 The parties agree that our review is only for plain error because this challenge has been made for the first time on this appeal. Segars points out, correctly, that if this conviction stood alone, U .S.S.G. § 2S.1(a) and (b) would not justify a sentence of 240 months. (The amount involved was approximately $10,000, and an offense level of 26, along with a criminal history, even of III, would produce a sentencing range of 78 to 97 months.)
 
 
 40
 The government suggests that this offense was grouped with the cocaine offenses under § 3D1.2, and the highest offense level (for the cocaine conspiracy) would apply to all offenses in the group. Twenty years, or 240 months, is the statutory maximum for the money laundering offense, and because that is less than the sentence resulting from the offense level of 39, § 5G1.1 required that the sentence be the statutory maximum. Judge Miller did not spell this out in his memoranda either in 1991 or 1998, probably considering it unnecessary, and that is doubtless the reason for the 240 month concurrent sentence for money laundering. There was no plain error.
 
 VIII. Conclusion
 
 41
 The sentence on the cocaine counts, dealt with in part II, must be corrected by reducing the Criminal History Category to I. The sentence is vacated insofar as it exceeds 262 months and the case is remanded for selection of a sentence within the sentencing range and imposition of that sentence accordingly. In all other respects the judgment appealed from is affirmed.
 
 
 
 [1]
 This appeal was deemed successive and the same panel retained it for decision. After examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [2]
 The cases referred to are U.S. v. Edwards, 945 F.2d 1387 (7th Cir.1991) and U.S. v. Young, 997 F.2d 1204 (7th Cir.1993)